SHELLY, APPELLEE, *v.* MOTTER, APPELLANT.*

*Motion to certify the record overruled, October 5, 1960,

(No. 459—Decided March 9, 1960.)

*Messrs. Kaylor & McKinley* and *Mr. Justin McElroy*, for appellee.

*Messrs. Mahon & Lady* and *Messrs. Van Dyne & Van Dyne*, for appellant.

MIDDLETON, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas entered upon a verdict for the plaintiff. Plaintiff's action arose out of an automobile collision which occurred at the intersection of High Street Road and Lafayette-Harrod Road in Hardin County. High Street Road is a through highway and Lafayette-Harrod Road is a county road with stop signs erected at its intersection with High Street Road. Plaintiff, in her petition, avers that on the afternoon of May 16, 1956, she was riding as a passenger in the motor vehicle of Elmer Guy Stober, being driven by Stober in a southerly direction on Lafayette-Harrod Road in the west lane of traffic, and that, when the Stober car reached a point in said intersection south of the center line of the High Street Road, the defendant who was driving his motor vehicle at a high and excessive rate of speed, approximately 80 miles per hour, in a westerly direction in the south lane of traffic on High Street Road drove his vehicle against the left side of the Stober vehicle in such negligent, careless and unlawful manner, causing the vehicle to be shoved against a telephone pole located at the southwest corner of the intersection; and that as a result of said impact she sustained painful and disabling personal injuries. Subsequent to the filing of this action the plaintiff died of causes not connected with or resulting from the collision which is the basis of this action, and this action was subsequently revived in the name of the administrator of plaintiff's estate. The defendant, by answer, admitted the location of the highways involved; that the plaintiff was a passenger in the Stober automobile as alleged; and that a collision occurred be-

tween the Stober automobile and the automobile driven by the defendant in or near the intersection of High Street Road and Lafayette-Harrod Road. The answer contains a general denial of all the allegations in plaintiff's petition not expressly admitted to be true.

As heretofore stated, upon trial the jury returned a verdict for plaintiff and judgment was entered thereon by the court. For his assignments of error, the defendant sets forth six claimed errors in the proceedings in the trial court, to wit:

"First. The court erred in overruling the motion of defendant-appellant for a new trial;

"Second. The verdict of the jury is against the manifest weight and without sufficiency of evidence;

"Third. The court erred in its charge to the jury on the trial of said action;

"Fourth. The court erred in overruling the motion of defendant-appellant to direct a verdict for the defendant at the close of the evidence of the plaintiff-appellee;

"Fifth. The court erred in overruling the motion of defendant-appellant to direct a verdict for the defendant at the close of all the evidence;

"Sixth. For other errors apparent upon the face of the record."

Plaintiff's action is based upon two averments of negligence against the defendant, first, operating his automobile at the time of the collision at an excessive and unreasonable rate of speed, to wit, 80 miles per hour, and second, driving his automobile in a westerly direction in the south lane of traffic.

The only testimony offered by the plaintiff to support the charge of excessive speed is that of Stober, the driver of the car in which plaintiff was riding.

On direct examination, Stober testified:

"40. * * * Now, Mr. Stober, when you approached the intersection tell the jury what you did? A. Well, I stopped the car.

"41. Where? A. At—right at the intersection there, and looked both ways, and I didn't see anything a-coming.

"42. And then what did you do? A. Then I proceeded to go across the center line in the road when he hit me. I never

saw him at no time. I never saw him. He was going at an awful fast speed. It was eighty miles an hour or faster when he hit me; that I never saw him when he come up over that raise so fast.''

On cross-examination, he testified:

''82. You say you did not see Mr. Motter this day? A. I never saw him until he hit me.

''83. And yet you say he was driving eighty miles an hour in an old Pontiac. A. Well, he sure was or he couldn't pick that car that I had up and slam it against the pole.

''84. And yet you never saw him? A. I never saw him until we were hit; there was nothing on the road to the east or to the west when I started across the intersection.

''* * *

''104. And then this is true, 'I don't know how fast ''the other fellow was driving'' '—I am inserting that in—'because I didn't see the car'; is that your statement? A. I never saw the car until he hit me. He come up over that raise.

''105. Well, I ask you then frankly; is that a true statement, that you didn't know how fast he was driving? A. I couldn't tell how fast he was driving, but I don't see how he can mash up a car like that; it was plum wrecked.

''106. But you didn't see him; you don't know how fast he was driving? A. Well, that is true, yes.''

The foregoing constitutes all of the testimony found in the record on the subject of speed at which the defendant was driving at the time of the collision. It is apparent that there is no probative evidence in the record to support plaintiff's allegation of negligence that the defendant was operating his automobile at an excessive or unreasonable rate of speed.

In support of plaintiff's allegation of negligence that the defendant was operating his automobile in the left lane of traffic, the driver of plaintiff's car testified:

''42. And then what did you do? A. Then I proceeded to go across the center line in the road when he hit me. I never saw him at no time. I never saw him.

''* * *

''48. Where did his car hit yours? A. It hit it back of the center post at the rear door, back of the center post; it didn't hit it where I was at.

"52. Now, where was your car—where was your car when the collision took place? A. Well, it was south of the center line. * * *"

The witness did not see defendant's car prior to the collision, nor did he say that the defendant's car was south of the center line, nor can there be any conclusive inference drawn from such testimony that the defendant's car was south of the center line of High Street Road at the time of the collision.

This action being one of those mentioned in Section 2317.03, Revised Code, being an action by the administrator, the defendant was disqualified to testify as a witness.

The defendant called as a witness A. T. Garlock, a state highway patrolman, who testified that he talked to Stober after the collision and that Stober stated that "he was driving south on Napoleon Road; he said he approached the intersection and did not see the stop sign until the last instant and then applied his brakes, and at that time there was a collision."

Carl Smith, who did not see the accident, was called as a witness for the defendant and testified that he arrived at the scene of the accident very shortly after it occurred and talked to Stober; that he asked Stober what happened, and Stober said he ran a stop sign at the junction of High Street Road and Lafayette-Harrod Road. This witness testified that as he drove up, coming from the east, he saw skid marks in the road and that when the skid marks started they were completely on the driver's side of the road or the north side of the road.

On cross-examination, he was asked if the skid marks started back west or east of the Napoleon Road and then made one continuous skid mark right up into the place of the accident. He answered:

"A. You mean, east?

"3. East of Lafayette Road. A. Yeah, they started back east of the crossing."

The Legislature has enacted certain traffic rules which govern the operation of motor vehicles on the public highways. The following provisions of the Code are pertinent to the issues of the case at bar.

Section 4511.30, Revised Code, provides in part as follows:

"No vehicle or trackless trolley shall, in overtaking and

passing traffic, or at any other time, be driven to the left of the center or center line of the roadway under the following conditions:

"* * *

"(C) When approaching within one hundred feet of or traversing any intersection or railroad grade crossing, unless compliance with this section is impossible because of insufficient roadway space."

Section 4511.43, Revised Code, provides in part as follows:

"The operator of a vehicle, intending to enter a through highway, shall yield the right of way to all other vehicles, streetcars, or trackless trolleys on said through highway * * *.

"The operator of a vehicle, streetcar, or trackless trolley shall stop in obedience to a stop sign at an intersection and shall yield the right of way to all other vehicles, streetcars, or trackless trolleys not obliged to stop * * *."

To sustain the verdict the record must show that the defendant in operating his automobile was guilty of one or both of the specifications of negligence as charged by the claimant and that such negligence either alone or in concurrence with the negligence of the driver of the car in which plaintiff was riding was the proximate cause of the accident, and this burden rests with the plaintiff to prove by a preponderance or greater weight of the evidence.

A careful study of the record does not support plaintiff's claim that defendant's car was south of the center line of the High Street Road at the time of the collision nor is there any evidence that the skid marks crossed over from the north side to the south side of High Street Road. As heretofore stated, there is no evidence in the record to support the claim of the plaintiff that the defendant was operating his automobile at the time of the collision at an excessive, unreasonable or unlawful rate of speed.

The defendant, traveling upon a through highway, had a preferential right of way to proceed uninterruptedly across the intersection, provided he was traveling in a lawful manner. The skid marks on the north side of the highway just east of the intersection indicate that the defendant's progress was interrupted and that the collision with the Stober car at the intersec-

tion is proof that this interruption to defendant's progress was caused by the Stober car which failed to yield to the defendant the right of way.

Since the skid marks demonstrated that at the point of brake application defendant was on his proper side of the road, then at such time and place he had the right of way over plaintiff's driver, which entitled him to proceed without interruption.

As the record shows that defendant was traveling in a lawful manner upon such preferential highway just prior to the accident and that his progress across the intersection was prevented by the collision with the Stober car, approaching from a different direction, the plaintiff upon such a record failed to establish that the defendant was negligent in either respect as charged, or that the conduct of the defendant was the proximate cause of the accident. Under this state of facts, as revealed by the record, the question of whether the collision between the defendant's car and the Stober car occurred at a point north or south of the center line of High Street Road becomes immaterial in determining the negligence of the defendant.

The court charged the jury with respect to the speed of the defendant, as in itself constituting negligence if in violation of the statute and as bearing upon the question of defendant's loss of his preferential right of way. Since plaintiff's driver did not at any time see the defendant's car prior to the collision, his testimony as to defendant's actual speed had no probative value whatsoever. The only other evidence which could be said to have the slightest bearing on speed was the testimony of the plaintiff's driver to the effect that the force of the impact drove his car against a pole at the southwest corner of the intersection, and the testimony of the telephone repairman, Carl Smith, as to the skid marks which he observed on the pavement. It is well known that even a slight impact, at low speed, may be sufficient to force another car off a road and into a pole, and, as there was no expert testimony in the record from which a jury might determine speed from the length of skid marks, neither the testimony as to the impact nor the testimony as to the skid marks had any probative value as to unlawful speed.

In submitting the issue of speed to the jury, the court permitted the jury to speculate as to a matter which the evidence

did not place in issue, and since the jury by so speculating could have concluded that the defendant was traveling at an excessive rate of speed, constituting negligence, and that such negligence was the proximate cause of the collision, the defendant was prejudiced thereby, and the action of the court in this respect constituted prejudicial error.

There being no evidence upon which to base a finding that the defendant was actionably negligent, either in respect to speed, or in respect to driving his car south of the center line, the verdict of the jury and the judgment of the trial court are contrary to law and the judgment is, therefore, reversed and final judgment is entered in favor of the defendant.

*Judgment reversed.*

YOUNGER, P. J., and GUERNSEY, J., concur.