SUCHY, APPELLEE, *v.* MOORE, APPELLANT.
ROBERTS, APPELLEE *v.* BOHN, APPELLANT.

(Nos. 71-214 and 71-343—Decided February 16, 1972.)

*Messrs. Thomas & Thomas* and *Mr. Harold B. Thomas,* for appellee in case No. 71-214.

*Messrs. Kinder, Kinder & Kinder, Mr. Gordon T. Kinder* and *Messrs. Frazier & Somer,* for appellant in case No. 71-214.

*Messrs. Pfau, Comstock & Springer* and *Mr. William E. Pfau, Jr.,* for appellee in case No. 71-343.

*Messrs. Harrington, Huxley & Smith* and *Mr. John C. Litty, Jr.,* for appellant in case No. 71-343.

SCHNEIDER, J. "In Ohio, as elsewhere, it is a rule of universal application that in a tort action, the measure of damages is that which will compensate and make the plaintiff whole." *Pryor* v. *Webber* (1970), 23 Ohio St. 2d 104. The exception to the general rule that evidence of compensation from a source other than the tortfeasor, or persons in privy with him, cannot diminish the damages for which he is liable, was first recognized judicially in this state in *Klein* v. *Thompson* (1869), 19 Ohio St. 569.

The receipt of collateral benefits is irrelevant and immaterial on the issue of damages. Not only are the benefits not deductible, but their receipt should not be admitted in evidence, over objection, or otherwise disclosed to the jury. The admission is error. At least after the announcement of *Pryor* v. *Webber, supra* (23 Ohio St. 2d 104), an attempt at disclosure of such matters, on counsel's part, could only be motivated by mischief bordering on misconduct, for which a motion for mistrial ought to be granted. However, these cases were tried, appealed to the Court of Appeals, and decided by that court before the announcement of that case.

Each defendant contends, therefore, that a new trial should not be granted the plaintiff unless the record affirmatively shows that the error was prejudicial. In these cases, we agree. *Smith* v. *Flesher* (1967), 12 Ohio St. 2d 107; *State* v. *Stanton* (1968), 15 Ohio St. 2d 215; *Tighe* v. *Diamond* (1948), 149 Ohio St. 520, 531; *Ochsner* v. *Cincinnati Traction Co.* (1923), 107 Ohio St. 33; and *Ohio Life Ins. & Trust Co.* v. *Goodin* (1860), 10 Ohio St. 557.

In arriving at the conclusion that the introduction and admission on cross-examination of collateral source evidence was prejudicial in *Pryor* v. *Webber, supra* (23 Ohio St. 2d 104), the court reviewed the entire record in order to ascertain whether the erroneous admission could reasonably be expected to prejudice a jury on the issue of plaintiff's overall credibility.

As stated in the opinion, at page 116:

"The admission in evidence of the receipt of collateral benefits, after the testimony *as to lost wages,* strongly suggested to the jury that Mrs. Pryor had lied to the jury and was, in fact, attempting to collect twice as to that item of damage. The injury claimed by Mrs. Pryor was such that acceptance by the jury of her testimony as to subjective symptoms was extremely critical to her case. Additionally, it appears from the record that her credibility was also important in the establishment of liability. We note also that, based upon the disclosure of such benefits, the credibility of Mrs. Pryor was attacked in argument to the jury." (Emphasis supplied.)

In the instant cases, neither plaintiff testified on direct examination that his wages were "lost," but the probable effect of his testimony was to lead the jury to that conclusion. Thus, the revelation, over objection on cross-examination, that the conclusion would be incorrect could result in an impeachment of plaintiff's overall credibility.

However, despite the potentiality that the jury may become biased against a plaintiff by such cross-examination, we hold that prejudice did not automatically infect these records.

Where, as in each case, negligence, proximate cause and damages are presented as separate, genuine and determinative issues, free from error, and are resolved by a general verdict untested by interrogatories, error with regard to presentation of the damages is harmless unless it is affirmatively shown by the party against whom the verdict is rendered that the error "palpably prejudiced" the jury against the entire case of the losing party. *Sherer* v,

*Smith* (1951), 155 Ohio St. 567; *Centrello* v. *Basky* (1955), 164 Ohio St. 41.

Cf. *Plas* v. *Holmes Construction Co.* (1952), 157 Ohio St. 95 (plaintiff impeached with contents of two divorce petitions alleging his bad temper and rude conduct; "the prejudicial effect of the denunciation of the plaintiff was sweeping and all pervasive, resulting in unmistakable prejudice to the entire case of the plaintiff and depriving him of a fair trial upon all issues involved in the case"), and *Acrey* v. *Bauman* (1938), 134 Ohio St. 449 (two-issue rule inapplicable where testimony on one issue engenders racial prejudice).

In assessing whether plaintiff was "palpably prejudiced," a court must evaluate the impact, in each case, of cross-examining plaintiff as to the receipt of collateral benefits.

The immediate objective, of course, is to mitigate damages to the extent of the benefits received. This may be defeated by curative instructions. Thus, in *Suchy*, the court's warning not to consider compensation or wages received for the purpose of diminishing damages ought to have been sufficient to avert the prejudicial effect of the error as it relates solely to the issue of damages. In *Roberts*, no such "curative" instruction was given. To the contrary, the court charged that damages allowable to plaintiff were only those which would compensate and make the plaintiff whole.

The second and larger objective is to attack plaintiff's general credibility and character, which, if successful, permeates not only the issue of damages but subjects plaintiff to the risk that the jury might view his apparent deception with such disfavor as to palpably prejudice it against *any* recovery for him.

In *Suchy*, the cross-examination of plaintiff merely elicited the fact that he had been paid his salary, practically in full. Nowhere does it appear that defense counsel developed that admission into an overall attack on plaintiff's character and veracity. The bill of exceptions does not contain the arguments but a notation therein merely indi-

cates that defense counsel referred to the plaintiff's receipt of wages.

In the absence of a transcription of the argument in full, it cannot be said as a matter of law that the trial court's curative instruction, which admonished the jury to disregard the tainted evidence, was inadequate to prevent any palpable prejudice from arising. See *Friedl* v. *Lackman* (1939), 136 Ohio St. 110; *Logan* v. *Cleveland Ry. Co.* (1923), 107 Ohio St. 211; and *Henkle* v. *McClure* (1877), 32 Ohio St. 202. Under the circumstances, we hardly think it was necessary for the court to have explained to the jury that the policy of the law, not plaintiff's lack of candor, accounted for his failure to have voluntarily revealed his receipt of wages during his alleged disability.

Nor was the revelation of receipt of wages utilized in *Roberts* to discredit the plaintiff in the minds of the jury. The plaintiff was not a factual witness as to the issues of liability or proximate cause. The bulk of Mrs. Roberts' testimony dealt with the type and extent of her injuries. At the time of the accident, she was a passenger in one of the automobiles involved, recalled very little of the surrounding circumstances directly preceding the accident, and admitted that she had no knowledge of the key fact in the case, the color of a traffic light. Substantially all of plaintiff's case on the issues of defendant's negligence and proximate causation consisted of a deposition of the driver of the automobile in which Mrs. Roberts was riding.

The record is clear that Mrs. Roberts' credibility could not have been involved in connection with the liability portion of her case, even if her credibility had been attacked, which it was not. In fact, it was admitted by defense counsel in final argument that plaintiff was "honest," and had testified truthfully, about her injuries.

Thus, in each case, a general verdict in favor of defendant rendered the error as to the proper amount of damages harmless, since plaintiff's credibility and character were not attacked in such a fashion as to palpably prejudice the jury on the other determinative issues of the case.

Accordingly, the judgment of the Court of Appeals in each case is reversed on the above question.

A further and distinct question is presented in *Roberts*. Plaintiff attempted to prove that defendant was traveling in excess of the 25 mile-per-hour speed limit at the time of the accident. He elicited from defendant on cross-examination the fact that the latter's automobile left skid marks of approximately 36 feet in length leading up to the point of collision. Plaintiff offered no testimony, expert or otherwise, as to the speed of the automobile by utilizing the length of the skid marks.

The trial court charged the jury that "tire skid marks made by a motor vehicle involved in an accident are not probative evidence of the speed of such vehicle, in the absence of expert testimony as to the use of the length of skid marks in determining speed."

The Court of Appeals held that the charge constituted prejudicial error and certified to us its judgment as in conflict with the judgments rendered in *Gutter* v. *Frazer*, 120 Ohio App. 305, and *Shelly* v. *Motter*, 112 Ohio App. 201, wherein such language was used with approval.

We agree with the conclusion reached by the Courts of Appeals in the latter cases and, therefore, reverse the judgment in *Roberts* on this question as well.

"A non-expert witness should not be allowed to give his opinion, based solely on tire or skid marks made by the tires of the car in question, as to the speed at which it was being operated at the time of the accident." 23 A. L. R. 2d 136, Section 12 (citing cases from Iowa, North Carolina, Oregon, and Washington). Accord: *Jackson* v. *Trogan* (1961), 364 Mich. 148, 110 N. W. 2d 612; *Everart* v. *Fischer* (1915), 75 Ore. 316, 324, 145 P. 33; *Cleasby* v. *Taylor* (1934), 176 Wash. 251, 28 P. 2d 795. See, also, 8 American Jurisprudence 2d 545, Section 990.

If the foregoing is valid, as we think it is (apparently the parties here concur because no lay witness on either side attempted to base his opinion of speed on the skid marks), there was no valid reason to permit nonexperts on a jury in this case to speculate, from the length of the skid

marks shown by the evidence, that defendant's automobile exceeded 25 miles per hour. This is not to say that, in another case, skid marks may not constitute probative evidence, in connection with other evidence, of manifestly excessive speed, or even of reckless driving. Thus, we approve of the cases of *Gutter* and *Shelly,* on their facts, but disapprove of the absolutism of the rule therein announced.

The sounder view is expressed in *Knight* v. *Borgan* (1958), 52 Wash. 2d 219, 324 P. 2d 797, as follows, at page 227:

"We are satisfied that the determination of the *rate* of speed of an automobile based upon tire skid marks of a certain length, made under a given set of circumstances, is not a matter of such general knowledge as to be within the common experience of laymen." (Emphasis supplied.) Accord: *Nesta* v. *Meyer* (1968), 100 N. J. Sup. 434, 242 A. 2d 386; *Ruther* v. *Tyra* (1952), 207 Okl. 112, 247 P. 2d 964.

We hold the rule, that the issue of causal connection between an event and a result involving expert inquiry must be established by expert opinion, to be applicable equally to nonmedical as it is to medical questions. See *Darnell* v. *Eastman* (1970), 23 Ohio St. 2d 13.

Accordingly, in each case, the judgment of the Court of Appeals is reversed and the final judgment entered by the trial court for the defendant is reinstated.

*Judgments reversed.*

O'NEILL, C. J., HERBERT, SILBERT, CORRIGAN, STERN and LEACH, JJ., concur.

SILBERT, J., of the Eighth Appellate District, sitting for DUNCAN, J. JUDGE SILBERT of the Court of Appeals was, pursuant to Section 2 of Article IV of the Constitution of Ohio, duly directed by the Chief Justice "to sit with the justices of the Supreme Court in the place and stead of" JUSTICE DUNCAN and JUDGE SILBERT did so and heard and considered this cause prior to the resignation of JUSTICE DUNCAN on November 28, 1971.

HERBERT, J., concurring. Upon the collateral source question, the references to *Pryor* v. *Webber* (1970), 23 Ohio St. 2d 104, 263 N. E. 2d 235, contained in the syllabus should be given careful consideration by those who are likely to be involved with this issue in the future.

It seems necessary that there be some areas of the law which, until changed, should be unqualified. Otherwise, those for whom our courts were established are denied the ability to even guess what result may obtain from a given advocacy. (See first paragraph of concurring opinion of Schneider, J., in *Briere* v. *Lathrop Co.* [1970], 22 Ohio St. 2d 166, 258 N. E. 2d 597.) Such uncertainty fosters litigation and denigrates the public's view of our system of justice.

It is these thoughts which lead to a conclusion that when this court determines that the violation of a particular rule of law relating to trial practice constitutes reversible error, considerations of judicial policy should proscribe equivocation in either the application of the rule or the consequences of its infraction.* Certainly, the number of rules entitled to such status should be small, and the impact of their violation clear when tested by the yardstick of human experience.

The damage done by disregarding the rule proscribing divulgence to a jury of collateral source receipts is such as should require an unwavering adherence to the precept as a matter of judicial policy.

---

*The conclusion in this regard may not represent a departure from existing precedent. A sequential perusal of the following cases could lead to the deduction that this court has already quietly adopted such a doctrine. *Schweinfurth* v. *C. C. C. & St. L. Ry. Co.* (1889), 60 Ohio St. 215, 54 N. E. 89; *Reep* v. *Greyhound Corp.* (1960), 171 Ohio St. 199, including dissent by Weygandt, C. J., and Bell, J., at page 201, 168 N. E. 2d 494; *Bahm* v. *Pittsburgh & Lake Erie Rd. Co.* (1966), 6 Ohio St. 2d 192, 217 N. E. 2d 217; *Myers* v. *Lawson Milk Co.* (1968), 14 Ohio St. 2d 111, 236 N. E. 2d 542; *Mills* v. *Pennsylvania N. Y. C. Transp. Co.* (1968), 16 Ohio St. 2d 97, 104, note 1., 243 N. E. 2d 99; *Kyle* v. *Fok* (1969), 18 Ohio St. 2d 70, 247 N. E. 2d 457.