SHILLING ET AL., APPELLANTS, *v.* MOBILE ANALYTICAL SERVICES, INC., D.B.A. MASI ENVIRONMENTAL LABORATORIES, APPELLEE.

[Cite as *Shilling v. Mobile Analytical Services, Inc.* (1992), 65 Ohio St.3d 252.]

(No. 91–2245—Submitted September 16, 1992—Decided December 16, 1992.)

*Grieser, Schafer, Blumenstiel & Slane Co., L.P.A., C. Richard Grieser* and *J.B. Blumenstiel,* for appellants.

*Bailey & Slavin, Richard W. Bailey* and *Richard C. Slavin,* for appellee.

*Clark, Perdue & Roberts Co., L.P.A.,* and *Dale K. Perdue,* urging reversal on behalf of *amicus curiae* Ohio Academy of Trial Lawyers.

*Porter, Wright, Morris & Arthur, William M. Todd* and *Randall W. Knutti,* urging affirmance on behalf of *amicus curiae* Ohio State Medical Association.

HERBERT R. BROWN, J.  The issue presented is whether an expert witness who is not a physician, but a Ph.D. who specializes in neurotoxicology, is qualified to render an opinion that the ingestion of gasoline caused injury to the brain and nervous system.  For the reasons that follow, we hold that such an expert can be so qualified.

Expert testimony is governed by Evid.R. 702: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."  We must therefore determine the extent to which Dr. Singer is qualified to render an opinion on the cause of the Shillings' disabilities based on his "knowledge, skill, experience, training, or education."

Dr. Singer has an extensive and impressive vita dealing with psychology, biological effects on the central nervous system, and neurotoxicology.  He has been a fellow at the National Institute of Health and at the Mount Sinai School of Medicine, has won the NIH National Research Service Award, and has a long list of publications dealing with neurotoxicity and its effects.  He is qualified by "knowledge, skill, experience, training, or education" to testify on the subject of toxicity of gasoline on the human nervous system.

Dr. Singer is not a physician but a Ph.D., and the courts below cited *Darnell v. Eastman* (1970), 23 Ohio St.2d 13, 52 O.O.2d 76, 261 N.E.2d 114, as precedent to indicate that only a medical doctor can testify as to the causal connection between an injury and a subsequent physical disability.  The syllabus in *Darnell* states as follows:

"Except as to questions of cause and effect which are so apparent as to be matters of common knowledge, the issue of causal connection between an

injury and a specific subsequent physical disability involves a scientific inquiry and *must be established by the opinion of medical witnesses competent to express such opinion.* In the absence of such medical opinion, it is error to refuse to withdraw that issue from the consideration of the jury." (Emphasis added.)

*Darnell* does not resolve the issue we are asked to decide. The somewhat ambiguous term "medical witnesses" does not require that such witnesses be medical doctors. Many issues of medical diagnosis involve areas of expertise. Doctors often rely on lab studies performed by experts who are not licensed physicians. For instance, a doctor may give a medical diagnosis where the diagnosis relies upon the test results of a chemist or technician to determine blood-alcohol content (provided the chemist is qualified and the test results have been properly admitted).

Dr. Singer is qualified to testify that the ingestion of gasoline caused injury to the brain and nervous system. He may also be qualified to testify as to the probable physical effects of such damage on the human system. If, however, the actual symptoms of the plaintiffs were caused by a medical condition which is beyond the expertise of Dr. Singer, then Dr. Singer would not be qualified to express a conclusion on the proximate cause of those symptoms. Such testimony would require the expertise of a witness qualified to evaluate *both* possible causes. Even so, the testimony of Dr. Singer that ingestion of gasoline caused damage to the brain would be admissible. It meets the test of Evid.R. 702. The fact that *additional* expert testimony may be required to establish a connection between such brain damage and all of the symptoms claimed by plaintiffs does not bar conclusions which do fall within Dr. Singer's expertise. The trial court erred in so holding.

The issue presented is not whether Dr. Singer's expertise allows him to testify that all of the symptoms exhibited by plaintiffs were caused by contaminated water. Those issues pertain to measurement of damage and are not before the court at this time.

The pivotal point is this: If the plaintiffs suffered brain injury caused by the toxic poisoning, that is sufficient to overcome a motion for summary judgment. It at least entitles plaintiffs to nominal damages. See *Tootle v. Clifton* (1871), 22 Ohio St. 247, 253. The trial court erred in granting summary judgment, as there remain material issues of fact for a jury to determine.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and RESNICK, JJ., concur.