This is an appeal from a judgment entered by the Scioto County Commom Pleas Court, upon a jury verdict, finding in favor the Kroger Company (hereinafter referred to as "Kroger"), defendant below and appellee herein, on the claims brought against it by James Slaughter and Joann Slaughter, plaintiffs below and appellants herein. The following error has been assigned for our review:
 "THE TRIAL COURT ERRED IN PERMITTING DEFENDANT-APPELLEE TO USE A 1995 VIDEO CROSS-EXAMINATION OF PLAINTIFF-APPELLANT'S DOCTOR AS AND FOR DEFENDANT-APPELLEE'S CROSS-EXAMINATION OF PLAINTIFF-APPELLANTS DOCTOR WHEN SAID DOCTOR WAS TESTIFYING LIVE AT THE TRIAL IN 1998. THE 1995 DEPOSITION WAS A VIDEO DEPOSITION OF THE CROSS-EXAMINATION OF PLAINTIFF-APPELLANT'S DOCTOR PLAYED BACK IN ITS ENTIRETY TO THE JURY WHICH CONFUSED THE JURY BECAUSE THE DOCTOR'S TESTIMONY WAS SIGNIFICANTLY CHANGED IN 1998 BECAUSE THE DOCTOR COULD CLAIM THAT THE INJURIES THAT THE PLAINTIFF-APPELLANT SUSTAINED HAD COME TO FRUITION IN 1998 WHEN IN 1995 THE COMPLICATIONS THE PLAINTIFF -APPELLANT WOULD HAVE HAD NOT REVEALED THEMSELVES."
The record reveals the following facts pertinent to the case at bar. Appellant, James Slaughter, was diagnosed with diabetes in the late 1980s. He was placed on various oral hypoglycemic agents which, for a while, managed to keep the disease at manageable levels. However, by 1991 his blood sugar "flared up and was running high" which prompted his referral to Dr. George Borst, M.D., an internist specializing in endocrinology. Dr. Borst treated appellant's diabetes, in part, by prescribing a sulfonylurea drug known as Glynase Prestabs (hereinafter referred to as "Glynase").
On January 25, 1994, either Mr. Slaughter or his wife, Appellant Joann Slaughter, went to the pharmacy at Kroger in Wheelersburg, Ohio, to obtain a refill of his Glynase prescription. The prescribed dosage of this drug by Dr. Borst was three (3) milligrams but, inadvertently, the Kroger pharmacist dispensed pills containing twice that amount or six (6) milligrams. Mr. Slaughter took this medication for almost a month before the mistake was discovered. During that time, he developed urticaria (hives), angioedema (swelling) and respiratory distress. Since then, his diabetes has worsened to a point where he is now insulin dependent.
Appellants first brought suit against Kroger and other various defendants in 1995 but ultimately dismissed their case the following year after an adverse evidentiary ruling. They refiled the action as the cause sub judice on December 30, 1996, alleging that the pharmacist negligently filled the prescription and that Kroger was liable for that negligence under the doctrine of respondeat superior. Such malfeasance, they asserted, led to "numerous failings" of "bodily functions" including cessation of insulin production in the pancreas thereby requiring Mr. Slaughter to have daily insulin injections. Appellants demanded compensatory damages for these injuries, as well as resultant medical expenses and loss of consortium, in excess of $2,000,000. Kroger filed an answer admitting that the prescription was mistakenly filled and that its pharmacist was operating within the scope of her employment at the time. Appellee denied liability, however, on the claim(s) brought against it and asserted inter alia that Mr. Slaughter's injuries were the result of his "own acts or omissions."
On March 5, 1997, the parties filed a joint stipulation agreeing "that all discovery completed in the first action shall be . . . transferred and effective in this refiled litigation." Specifically, they agreed that all videotaped depositions from the previous lawsuit could be used in this one. As the case got closer to trial, however, appellants grew increasingly concerned about the use of those prior depositions. On March 13, 1998, they filed a motionin limine asking the trial court to restrict appellee to the use of "any one (1) deposition, or any one (1) videotape, or the live testimony of any doctor herein" but not "bits and pieces of the same." Otherwise, appellants concluded, the use of selected portions of previous depositions "would be to[o] arduous and delay the trial significantly" and could "create a false image of the testimony previously taken." This motion was overruled by the trial court a week later.
The matter proceeded to a jury trial on March 23, 1998, at which time appellants adduced uncontroverted evidence of Mr. Slaughter's diminished physical capacities, and the progressive worsening of his diabetes, since taking the erroneously filled prescription. Appellee did not really contest Mr. Slaughter's then existing physical condition but, rather, argued that the double dosage of Glynase was not the proximate cause of his various medical problems. This contested issue of causation centered largely on the expert testimony of three (3) physicians. Dr. E.V. Gevedon, M.D., an allergist and immunologist, treated Mr. Slaughter for the hives and swelling that he suffered after ingesting the Glynase. It was the expert opinion of Dr. Gevedon that the double dosage of this drug offered "considerable explanation" for appellant's allergic reaction. The witness further opined that, to a reasonable degree of medical certainty, such allergic reaction caused Mr. Slaughter's pancreas to quit functioning appropriately. This opinion was corroborated by the testimony of Dr. Borst, appellant's endocrinologist, who related that Mr. Slaughter's "diabetic control ha[d] changed significantly for the worse since that time." Dr. Borst also opined that, to a reasonable degree of medical certainty, the "allergic reaction to the overdose of [G]lynase . . . damaged [appellant's] pancreas." The witness continued and explained that the double dosage of medication had rendered his patient "insulin dependent," whereas before Mr. Slaughter had been "non insulin dependent," and shortened his life span. Dr. Borst further testified that in the future Mr. Slaughter would develop eye and kidney problems as well as "neuropathy" and heightened sensitivity to pain.
There was also substantial evidence adduced to show that the double dosage of Glynase had little, if any, effect on Mr. Slaughter's deteriorating health. First, it was uncontroverted that he was very overweight at 6'1" and 280 lbs. His ideal body weight was described as being, approximately, 190 lbs. Dr. Borst placed appellant on a strict 1,800 calorie per day diet but this regimen was only "moderately" followed. It was also recommended that he get more exercise but this advice, likewise, went unheeded. The experts testifying on this point below were virtually unanimous in their opinion that even a modest weight loss of 15 lbs. would have yielded a significant improvement in managing appellant's diabetes. However, Mr. Slaughter's weight has remained relatively constant (around 275-280 lbs.) since the mid 1980s.
During the course of the trial, Dr. Borst was also cross-examined with the use of a video-taped deposition that he had given in the previous lawsuit. Portions of that deposition seem to contradict some of the statements he made during his direct testimony and included opinions that (1) an allergic reaction to Glynase can occur at any time, regardless of the dosage given, (2) increased dosages of Glynase would not necessarily lead to loss of control over blood sugar, (3) the problems experienced by Mr. Slaughter could be related to stress which he experienced after discovering that he was taking a double dosage of the medication, and (4) increased dosages of Glynase will not have "a direct or toxic effect on the pancreas." Dr. Borst also testified during the video-taped deposition that it was impossible to tell, at that time, what if any additional complications Mr. Slaughter might suffer as a result of taking the double dose of medication.[1]
Perhaps the most damaging evidence on the issue of causation came not from the cross-examination of Dr. Borst but from the testimony of defense expert, Dr. Ernest Mazzaferri, M.D., Professor and Chairman of the Department of Internal Medicine at the Ohio State University Medical School. Dr. Mazzaferri testified that the excess weight carried by appellant (i.e. 70-80 lbs.) made his diabetes worse and simply wore out his pancreas.[2] The witness continued that sulfonylurea drugs (such as Glynase) lose their efficacy with eighty five percent (85%) of patients over five (5) years and, given Mr. Slaughter's inability to lose weight, his eventual need for daily insulin shots was merely a natural progression of the disease. He also opined, to a reasonable degree of medical certainty, that the double dosage of Glynase taken by appellant would not have had any long term effect on him and would have had no connection to the worsening of his diabetes.
The case was given to the jury after three (3) days of testimony and they returned a general verdict in favor of appellee. Interrogatories completed by them during deliberation reveals that the jury found Kroger negligent in dispensing the wrong dosage of Glynase but that such error in refilling the prescription was not the direct and proximate cause of Mr. Slaughter's deteriorating health. Judgment to this effect was entered in favor of appellee on April 24, 1998, and this appeal followed.
Appellants' assignment of error is directed at the trial court's decision allowing Dr. Borst to be cross-examined with the video-taped deposition he gave during the first lawsuit. They contend that it was improper to play or read the deposition in its entirety and that its "proper usage . . . would have been for [defense counsel] to ask the doctor if he stated something different before in 1995 than what he is stating today and to impeach him pursuant to proper technique." Because this "proper technique" was not used, they continue, "the burden of rehabilitating the witness was impossible making it appear to the jury that [appellant] was impeaching his own witness." Appellants conclude that this was reversible error. We disagree for several reasons.[3]
First, appellants stipulated early in these proceedings that all discovery and videotaped depositions from the first lawsuit were transferred and "effective" for purposes of this case. They are bound by that stipulation and cannot unilaterally retract or withdraw from it. See City of Whitehall ex rel.Fennessy v. Bambi Motel, Inc. (Dec. 29, 1998), Franklin App. No. 98AP-384; In re Body (Jun. 23, 1998), Coshocton App. No. 97CA33, unreported; Horner v. Whitta (Mar. 16, 1994), Seneca App. No. 13-93-33, unreported. Having so stipulated, the usage of those videotaped depositions are governed by the provisions of Civ. R. 32(A)(3) which states, in pertinent part, that "[t]he deposition of a witness . . . may be used by any party for any purpose" if any one of the seven (7) criteria specified therein have been met. (Emphasis added.) One of those specified criteria is that the witness is an attending physician or medical expert. Id. at (e); also see Frye v. Weber SonsService Repair, Inc. (Jan. 22, 1998), Cuyahoga App. Nos. 72164 721565, unreported; Beckman v. Yellow Freight Systems, Inc.
(Feb. 12, 1997), Summit App. No. 17845, unreported. Dr. Borst clearly met that criteria and, therefore, his videotaped deposition could be used by any party for any purpose. The Ohio Supreme Court has indicated that there is nothing improper in one party using a videotape deposition taken by a party opponent and playing it to the jury. See Buchman v. Wayne TraceLocal School Dist. Bd. of Edn. (1995), 73 Ohio St.3d 260,279-280, 652 N.E.2d 952, 967. Likewise, we are not persuaded that there was any error on the part of the court below in allowing Kroger to play the videotaped deposition of Dr. Borst to the jury as part of its cross-examination of that witness.
Another problem with appellants' argument is that it fails to take into account that trial courts enjoy considerable discretion under Evid.R. 611(A) with respect to the method and mode by which evidence is introduced during a proceeding.See State v. Williams (May 18, 1998), Highland App. No. 97CA928, unreported; Smith v. Moore (May 15, 1998), Scioto App. No. 97CA2509, unreported; Hatfield v. Hatfield (Mar. 18, 1996), Ross App. No. 95CA2112, unreported. Similar discretion is also afforded with respect to the admission or exclusion of relevant evidence. See Peters v. Ohio State Lottery Comm. (1992),63 Ohio St.3d 296, 299, 587 N.E.2d 290; Riqby v. Lake Cty.
(1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056; State v. Saqe
(1987), 31 Ohio St.3d 173, 510 N.E.2d 343, at paragraph two of the syllabus. A decision on either point will not be reversed on appeal absent a showing of an abuse of that discretion. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. See Landis v. Grange Mut. Ins. Co. (1998),82 Ohio St.3d 339, 342, 695 N.E.2d 1140, 1142; Malone v.Courtyard by Marriott L.P. (1996), 74 Ohio St.3d 440, 448,659 N.E.2d 1242; Steiner v. Custer (1940), 137 Ohio St. 448,31 N.E.2d 855 at paragraph two of the syllabus. In order to have an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Nakoff v. Fairview Gen.Hosp. (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1, 3. Further, when applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. In re Jane Doe 1 (1991). 57 Ohio St.3d 135,138, 566 N.E.2d 1181, 1184; Berk v. Matthews (1990), 53 Ohio St.3d 161,169, 559 N.E.2d 1301, 1308. This is a difficult standard to meet and appellants have not persuaded us that it was met in this case.
The pre-eminent issue during the trial below was whether the double dosage of Glynase, negligently given by the Kroger pharmacist, was the proximate cause of Mr. Slaughter's worsening diabetes. Dr. Borst testified both on direct and re-direct examination that this was the case. However, in his previous videotaped deposition, the witness opined that an allergic reaction to this drug can occur at any time (regardless of dosage) and that it would not have "a direct or toxic effect on the pancreas." This testimony was highly relevant with respect to the issue of causation and, given that there was nothing improper in admitting the deposition under Civ.R. 32(A)(3), we find no abuse of discretion in allowing Dr. Borst to be cross-examined in this manner.
Our conclusion on this issue is buttressed by yet another consideration. Even assuming arquendo that there was error in allowing Dr. Borst's deposition to be played to the jury, that error would not be reversible unless it affected a substantial right and was inconsistent with substantial justice. See Civ. R. 61; Evid. R. 103(A). The Ohio Supreme Court has held that no judgment will be reversed unless it affirmatively appears that the appellant has suffered prejudice, Suchy v. Moore (1972),29 Ohio St.2d 99, 102, 279 N.E.2d 878, 880; State v. Stanton
(1968), 15 Ohio St.2d 215, 239 N.E.2d 92 at paragraph two of the syllabus, and no prejudice will be presumed by an appellate court where none is expressly demonstrated. State v. Freeman
(1985), 20 Ohio St.3d 55, 57, 485 N.E.2d 1043, 1045.
Appellants' argument on appeal is directed not so much at the use of Dr. Borst's videotaped deposition but at the manner by which it was used. They contend that the "proper" method for using this deposition would have been to question the witness as to whether he had previously made statements inconsistent with his direct testimony and then use the transcript of his prior deposition to impeach him with those inconsistent statements. However, as appellee points out in its brief, the very same evidence would have come before the jury if this method were used as came before them below when the videotaped deposition was played. Therefore, we fail to understand how appellants were prejudiced by use of this so-called "improper method" of impeaching the witness.
It is also worth repeating that Dr. Borst was not the only expert who testified below. Dr. Mazzaferri expressly opined (1) that Mr. Slaughter's worsened diabetic condition was a natural progression of the disease and to be expected given his' inability to lose weight, and (2) that the double dosage of Glynase would have had no long term effect on him or have any connection to his present dependence on insulin. The jury could well have afforded more weight and credibility to this opinion than to those given by Dr. Borst or Dr. Gevedon. That would have been well within its province as trier of fact and, given these opinions by Dr. Mazzaferri, we cannot conclude that the outcome of this case would have been any different if the videotaped deposition of Dr. Borst had not been played.
Appellants counterargue that they were prejudiced by allowing the videotape to be played both because it confused the jury and because it forced their counsel to rehabilitate the Dr. Borst on redirect examination. We are not persuaded by either argument. First, given the highly technical nature of the expert testimony, and considering the scientific processes described therein, it is highly unlikely that the jury was any more confused simply because Dr. Borst gave contradictory statements. Second, even if the jury was confused by the contradictions, appellants were perfectly free to clarify that confusion on redirect examination. This is, in fact, precisely what happened. The transcript reveals the following testimony by Dr. Borst on re-direct:
 "Q. Doctor, referring to the deposition video testimony taken in 1995, many things have changed since then; haven't they?
A. Yes.
* * *
 Q. And all those questions we asked you previously, as to your reasonable degree of medical certainty, do you re-adopt them here today regardless of what was played here in a 1995 deposition?
 A. I think they are all consistent with the exception of the advancement of his disease to insulin dependent diabetes.
 Q. Which is worse than insulin requiring; is that correct?
A. Yes."
Appellants also contend that they were prejudiced by being forced to rehabilitate Dr. Borst in this manner. However, this was no greater burden than is imposed on any other party whose witness has been impeached during cross-examination by a party opponent. We therefore reject any argument that appellants were unduly prejudiced by the playing of this videotape.
For all these reasons, we find no merit in appellants' assignment of error and it is accordingly overruled. The judgment of the trial court is affirmed.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Kline, P.J. Evans, J.: Concur in Judgment Opinion
For the Court
 BY: ______________________ Peter B. Abele Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
[1] Dr. Borst later clarified, during re-direct, that appellant had since become insulin dependent and would die without the required daily injections of insulin. The witness further emphasized that, but for the double dosages of Glynase improperly given to him, Mr. Slaughter would not have become insulin dependent.
[2] It was estimated by Dr. Mazzaferri that appellant would have had to consume "in the range of 4,000 calories a day" to maintain a consistent weight over all these years. This was more than double the caloric limit advised by Dr. Borst.
[3] It should be noted at the outset that this issue was, essentially, raised by appellants through their motion inlimine. That motion was overruled several days before trial began. Appellee argues in its brief that appellants waived this issue below by not objecting immediately prior to the video-taped deposition being played. Although this argument is premised on a correct interpretation of the law, see e.g. Statev. Hill (1996), 75 Ohio St.3d 195, 203; 661 N.E.2d 1068,1077; State v. Brown (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, at paragraph three of the syllabus, we find no waiver in this particular case. From our review of the transcript, appellants objected to the use of this deposition and argued against it being played during a conference in the trial court's chambers immediately before the testimony of Dr. Borst. The better practice might arguably have been to also object a few minutes later, during the actual trial, but we conclude that the objection in chambers was sufficiently contemporaneous to preserve the matter for appellate review.