OPINION
Defendant-appellant Blaine Tarnecki appeals the January 13, 2000 Judgment Entry of the Tuscarawas County Court of Common Pleas which granted plaintiff-appellee Minnesota Life Insurance Company's motion for summary judgment.
 STATEMENT OF THE CASE AND FACTS
In May, 1980 and January, 1984, appellee entered into agent's contracts with appellant. These agreements authorized appellant to sell insurance policy and conduct business as an agent of appellee. In either October or November of 1997, appellee suspended appellant from writing any new business. The company did not, at that time, terminate appellant's contract. The suspension was a direct result of appellant's wrongful retention and conversion of funds while he was an agent for appellee. At that time, appellee was aware appellant was involved in at least one incident of financial misconduct.
At this time, appellant was the owner of two disability insurance policy with appellee. As set forth in appellee's motion for summary judgment. Appellee also attached the affidavits of Cheryl Wolf and K. Roger Schoeni.
Appellant alleged he obtained a policy of disability insurance with appellee (Policy No. 1-681-4784H) and while properly submitting a claim under the policy, appellee wrongfully denied coverage.
Appellant had made payments on his policy in arrears through payroll deduction from appellee.
On February 16, 1998, appellant resigned as an agent from appellee. In a fax dated February 18, 1998, appellant ordered appellee to remove his insurance policies from the agent's payroll deduction plan. The facts also asked the company to send all future bills to him on a quarterly basis.
According to the affidavit testimony of Cheryl Wolf, appellant paid his premiums in arrears; each payment being made on the last day of the month to cover the period ending with the date of payment. In accordance with appellant's request, his last payment was deducted from his January 31, 1998 paycheck. This payment covered the period from January 1, 1998 through January 31, 1998. Each of appellant's polices contained a grace period of thirty-one days. Therefore, appellant was required to make his premium payment no later than March 3, 1998. Even though in the above referenced facts, appellant requested to be billed quarterly, the policy lapsed before any such bill was sent to appellant. On March 3, 1998, the date the grace periods for appellant's policies expired, appellee issued notices of lapsed and quick reinstatement offers to appellant. The quick reinstatement offers required appellant's signature verifying he had not treated with a physician after February 1, 1998 in order to reinstate the policies. On March 23, 1998, appellant sent his premium payments along with an unsigned quick reinstatement offer. On March 27, 1998, appellee returned appellant's premium explaining they would not reinstate his policies.
Appellant began treatment of depression, which he alleges resulted in a disability, on February 3, 1998. In January 1998, appellant sought out psychiatrist John W. Garland III, M.D. Appellant saw Dr. Garland for the first time on February 3, 1998. Dr. Garland diagnosed appellant with depression. Further, Dr. Garland administered the standard minnesota multiphasic personality inventory (MMPI). This test confirmed appellant had an elevated scale for depression. Further, Dr. Garland testified in his deposition an internal validity scale within the MMPI confirmed the elevated depression scale was accurate and not being "faked." Dr. Garland prescribed Prozac for appellant's depression and later added another medication, Zoloft. Appellant claims his clinical depression made him unable to perform the substantial and material duties of his occupation. He claims he was more anguish, and that he had lost his "drive." He decreased his business appointments from five a day to one or two per day, resigned from civic organizations, and suffered from an inexplicable fatigue. Although it is uncertain from the record, appellant filed a claim for disability benefits in March, 1998.
On June 4, 1998, appellee denied appellant's claim for disability benefits. The letter stated:
 * * * After thoroughly reviewing the medical information submitted from Dr. Garland with our consulting psychologist, it is our determination that you are not disabled as required by the terms of your policies. The available medical evidence does not support your inability to perform the substantial and material duties of your occupation. Therefore, we are closing the handling of your claim at this time.
 Your policies indicate that you are considered disabled if you are under the regular care of a physician and are unable to perform the substantial and material duties of your occupation. Therefore, the earliest onset of disability that can be considered for your claim is February 3, 1998, the date you first received medical treatment. * * *
On November 19, 1998, appellee filed a complaint in the Tuscarawas County Court of Common Pleas, alleging appellant misdirected and converted funds and breached his fiduciary relationship. Appellant filed an Answer and Counterclaim on January 19, 1999. This pleading admitted the substantive allegations contained in the complaint. Appellant also filed a counterclaim alleging appellee wrongfully denied coverage under his disability policy.
On August 30, 1999, appellee filed its Motion for Summary Judgment on the complaint. In a September 24, 1999 Judgment Entry, the trial court granted appellee's motion for summary judgement on the claims set forth in the complaint. The issues of the counterclaim still remained.
On November 23, 1999, appellee filed its motion for summary judgment on the counterclaim. The motion set forth two major arguments. First, appellee maintained appellant could present no evidence he was ever disabled under the policy during the effective dates relying on the deposition testimony of Dr. Garland. Second, appellant could make no claim for disability because he policy had lapsed before any disability occurred. Appellant filed a response to the motion on December 20, 1999 with a supporting affidavit. In his affidavit, appellant averred he believed he paid his premiums in advance and not in arrears. Accordingly, when appellant requested a termination of the payroll deduction for payment of his disability policy premiums, he believed he had through March, 1998, to pay his premium to keep his disability policy enforced. Further, appellant averred he was suffering from clinical depression which began in mid November, 1997.
In a January 13, 2000 Judgment Entry, the trial court granted appellee's motion for summary judgment on the counterclaim. It is from this judgment entry appellant prosecutes this appeal, assigning the following as error:
 WHEN A DEFENDANT PRESENTS EVIDENCE UPON HIS COUNTERCLAIM OF WRONGFUL DENIAL OF BENEFITS UNDER DISABILITY INSURANCE POLICIES THAT HE IS DISABLED BY CLINICAL DEPRESSION SO THAT IT REQUIRES THE REGULAR AND CUSTOMARY CARE OF A PHYSICIAN AND RESULTED IN I-US INABILITY TO PERFORM THE SUBSTANTIAL AND MATERIAL DUTIES OF HIS REGULAR OCCUPATION, AS THE POLICIES DEFINE DISABILITY, BY WAY OF AFFIDAVIT AND DEPOSITION, THE COURT ERRS IN GRANTING A MOTION FOR SUMMARY JUDGMENT, BECAUSE THE STATE OF THE RECORD IS SUCH THAT MATERIAL ISSUES OF FACT EXIST AND A JURY COULD COME TO THE CONCLUSION THAT THE DEFENDANT COULD PREVAIL.
 I
Appellant's sole assignment of error maintains the trial court erred in granting summary judgment where genuine issues of material fact exists. We note appellant does not specifically set forth any particular argument or genuine issue of fact in dispute within the argument. Instead, appellant points this court to the statement of fact to completely demonstrate any claimed error.
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc.
(1987), 30 Ohio St.3d 35, 36. Civ.R. 56(C) states, in pertinent part:
 Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421,429, citing Dresher v. Burt (1996), 75 Ohio St.3d 280.
It is based upon this standard we review appellant's assignment of error.
Appellant's sole assignment of error maintains there is a genuine issue of material fact as to whether he was disabled as defined under his disability policy. Appellant supports this position with his affidavit and deposition.
 Disability
Appellant owned two disability polices with appellee. The term disability is defined similarly, but not identically in each policy. Policy No. 1-681-484H defines disability as follows:
 Whenever we use the words "disability" or "disabled" in this policy, we mean a sickness or injury which:
 (1) requires the reasonable and customary care of a physician; and
 (2) results in your inability to perform the substantial and material duties of your regular occupation, as defined further ran the section.
 What are the substantial end material duties of your regular occupation?
 The substantial and material duties are those duties which account for fifty percent or more of your prior average earned income from your regular occupation * * *
 What if you engage in your regular occupation while your still disabled?
 If you work in your regular occupation while you are still disabled, you will be eligible to receive a benefit, if you are unable, due to your continuing disability, to earn from you regular occupation more than fifty percent of prior average earned income.
Policy No. 1-465-958H defines disability:
What is the definition of disability?
 When ever we use the words "disability" or "disabled", in this policy, we mean that due to sickness or injury, you are unable to perform the substantial and material duties of your regular occupation.
 What are the substantial end material duties of your regular occupation?
 The substantial and material duties of your regular occupation are those duties which account for a major portion of your income. You will be considered unable to perform the substantial and material of your regular occupation if you are unable, due to your disability, to earn from your regular occupation more than fifty percent of your prior average earned income.
In its motion for summary judgment, appellee pointed to the record to indicate appellant could not demonstrate he was clinically depressed. Dr. Garland testified on deposition he diagnosed appellant with major clinical depression, single episode, without psychotic features, moderate to severe. Dep. at 10. However, on cross examination, the following exchange took place:
 Q. Let me show you Mr. Tarneckils resignation letter of February 16, 1998, which we'll mark as Plaintiff's Exhibit 3.
Q. Had you seen that letter before today?
A. No.
 Q. Now, did Mr. Tarnecki tell you at any time during your sessions that in January of 1998 he became licensed with a new insurance company?
A. No.
 Q. Did he ever tell you that one of the reasons he was having difficulty making sales from October or November of 1997 forward was because his license with Minnesota had been suspended?
A. No.
 Q. Let me show you what we'll mark as Plaintiff's Exhibit 4, which is a February 20, 1998 letter from Mr. Tarnecki on this new insurance company's letterhead, Ohio National Services — Ohio National Financial Services.
Q. And I'll ask you if you've seen this letter before.
A. No, I've not seen this.
 Q. Okay. This letter is soliciting his old customers, isn't it?
 A. If I were to receive such a letter, I would assume that my broker had changed companies and that he would be hoping that I would follow him to his new company.
 Q. Is there anything in that letter that suggests to these customers that Mr. Tarnecki is physically, emotionally unable to handle their business?
A. No.
 Q. Is there anything inconsistent with this letter with what Mr. Tarnecki was telling you?
A. Yes, I think so.
Q. Okay. And what is that?
 A. If he were as depressed as he had represented to me, then I don't think it would be consistent that he would be seeking new business and inviting contacts with people that he had told me that he was not able to handle, not able to do at all.
 Q. Doctor, now that you've had to — had the opportunity to review some of these additional facts that were undisclosed by Mr. Tarnecki, would you agree with me that it's equally plausible that the symptoms Mr. Tarnecki told you about were an adjustment reaction to these business struggles and financial and criminal worries as opposed to severe depression?
A. They could well have been.
 Q. And, Doctor, would you agree with me that in light of these new facts you are now unable to say to a reasonable degree of medical probability whether or not Blaine Tarnecki was unable to perform the substantial and material duties of his regular occupation before you saw him on February 3rd of 1998?
A. That is true.
 A. Just so this point is understood, Doctor. As you sit here today, you cannot say to a reasonable degree of medical probability whether Mr. Tarnecki was able to perform the substantial and material duties of his regular occupation when you saw him on February 3z 8 of 1998; is that correct?
A. That's correct.
 Q. And same question with regards to any time after February 3rd, 1998, while you saw him.
A. That's correct.
Dep. of Dr. Garland at 45-48, 57.
We find appellee met its burden on summary judgment to identify those portions of the record demonstrating an absence of a genuine issue of material fact as to whether appellant was disabled. The burden then shifted to appellant to point to similar record evidence indicating a genuine dispute exist.
Appellant produced his affidavit, which stated in pertinent part:
 16. I was suffering from clinical depression with an onset in mid November of 1997, which progressively made me unable to perform the substantial and material duties of my regular occupation as an agent selling life insurance and disability insurance policy for Minnesota Life Insurance Company and related duties.
 17. I saw Dr. W. Garland, a psychiatrist in Georgia, for my condition and was diagnosed as having clinical depression and treated by him for clinical depression.
In Darnell v. Eastman, 23 Ohio St.2d 13, the Supreme Court held:
 Except as to questions of cause and effect which are so apparent as to be matters of common knowledge, the issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry and must be established by the opinion of medical witnesses competent to express such opinion. In the absence of such medical opinion, it is error to refuse to withdraw that issue from the consideration of the jury.
Id. Syllabus by the Court.
The foregoing requirement is likewise applicable to nonmedical questions where "the issue of causal connection between an event and a result involving expert inquiry must be established by expert opinion." Suchy v. Moore (1972), 29 Ohio St.2d 99, 107,279 N.E.2d 878. A qualified nonmedical expert may testify concerning the probability of any phenomenon to create an injury, but may not express a conclusion on whether "the actual physical symptoms of the plaintiffs were caused by a medical condition."Shilling v. Mobile Analytical Services, Inc. (1992), 65 Ohio St.3d 252,255, 602 N.E.2d 1154.
The pleadings put at issue whether appellant was in fact disabled, and whether any such disability resulted in his inability to perform the substantial and material duties of his regular occupation. The only expert opinion evidence which Plaintiffs offered to support their claims is the deposition testimony of Dr. Garland. However, Dr. Garland testified he could not confirm a diagnosis of clinical depression. Appellant's subsequent self-serving affidavit, which opined he was indeed clinically depressed is not enough to satisfy the standard set forth above.
Although not set forth in the argument portion of Minnesota Life's Motion for Summary Judgment, Minnesota Life also maintains appellant allowed his policies to lapse before making any claim. In support of this contention, Minnesota Life points to the affidavit of Cheryl Wolf, a senior disability claims examiner for Minnesota Life. After examining appellant's claim, Ms. Wolf stated each of appellant's policies lapsed on March 3, 1998.
We find this affidavit sufficient to shift the burden to appellant to produce some record evidence demonstrating a genuine issue of material fact as to whether the policies upon which this action is based were in effect at the time of the claim.
Appellant provided his own affidavit, appellant stated his experience as an insurance agent with Minnesota gave him a good faith belief his policy premiums were paid in advance. However, appellant makes has no disputed information about his own policies. Accordingly, we find appellant failed to meet his reciprocal burden on this issue.
Appellant's sole assignment of error is overruled.
The January 13, 2000 Judgment Entry of the Tuscarawas County Court of Common Pleas is affirmed.
By: Milligan V.J., Farmer, P.J. and Edwards, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Tuscarawas County Court of Common Pleas is affirmed. Costs assessed to appellant.