[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 13, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15389
Non-Argument Calendar

_____

D. C. Docket No. 04-00091-CV-4

CHRIS JAZAIRI,

Plaintiff-Counter-
Defendant-Appellant,

versus

ROYAL OAKS APARTMENT ASSOCIATES, L.P.,
a Parent Company and Subsidiaries,
MORGAN PROPERTIES, LTD.,

Defendants-Counter-
Claimants-Appellees,

MITCHELL L. MORGAN PROPERTIES, INC.
d.b.a. Royal Oaks Apartment Associates, L.P.,
a.k.a Morgan Properties, Inc.,

Defendant,

JOHN I-X DOES,
MITCHELL L. MORGAN MANAGEMENT, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

**(February 13, 2007)**

Before TJOFLAT, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Chris Jazairi appeals the decision of the district court to exclude the expert testimony of Dr. Eckhardt Johanning under Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S. Ct. 2786 (1993). Dr. Johanning diagnosed Jazairi with a "resolved or resolving" allergic inflammatory lung ailment and was prepared to testify that an indeterminate amount of non-toxic mold or mold-related bacteria discovered in Jazairi's apartment, which was owned and operated by Royal Oaks Apartment Associates, caused this ailment. We affirm.

## I. BACKGROUND

Jazairi and her roommate moved into an apartment at Royal Oaks in May 2002. Two months later, they noticed mold on their walls and floors and complained to the county health department. The health department found evidence of water intrusion and instructed Royal Oaks to remedy the apartment in accordance with EPA guidelines. Samples taken by the health department revealed

several genus of mold: Strachybotrys chartarum, Aspergiluss, Aureobasidium, Cladosprium, and Alternarian.

In August, Jazairi went to the emergency room complaining of memory loss, fatigue and malaise. An x-ray revealed interstitial thickening in her lungs. In September, Dr. Robert Remler diagnosed Jazairi with interstitial fibrosis–the scarring of lung tissue between the air sacs–and referred her to Dr. Patricia Constanzo, a lung specialist. On October 1, 2002, Jazairi left the apartment to live in a tent on undeveloped property, and then, after a month or two, moved into another apartment.

On Octrober 24, 2002, Jazairi visited Dr. Constanzo and complained of lung symptoms such as shortness of breath, coughing, and chest pains. Dr. Constanzo noted that Jazairi had smoked a pack of cigarettes a day for twenty years and suggested a series of tests to determine the treatment of her interstitial fibrosis. In February, 2003, Dr. Constanzo performed a fiberoptic bronchoscopy and discovered no fungal growth in Jazairi's lungs. While not ruling out hypersensitive pneumonitis (HP), an allergic reaction to mold spores, Dr. Constanzo concluded that the findings were more suggestive of chronic bronchitis caused by cigarette smoking. Dr. Constanzo prescribed Advair, which would ease breathing regardless of the cause of the interstitial fibrosis.

Jazairi apparently did not fill Dr. Constanzo's prescription. Instead, two times over the next year, she visited Dr. Eckerdt Johanning in Albany, New York, a doctor of environmental and occupational medicine with a specialty in mold-caused illnesses. Dr. Johanning tested Jazairi for moisture-related allergens, but not for outdoor allergies, and discovered no allergic reaction. He tested her for sensitivity to specific mold species and discovered that Jazairi was allergic to Termoactinomyces, a bacteria, but not any genus of mold. Dr. Johanning found antibodies in Jazairi's bloodstream consistent with exposure to bacteria. On her second visit, Jazairi's CT scans showed that her interstitial markings had almost cleared.

Dr. Johanning diagnosed Jazairi with resolved or resolving HP caused by exposure to a "cocktail" of mold and bacteria. Dr. Johanning reasoned that smoking effects are usually irreversible, that Jazairi is too young at 38 to have smoking effects, and that the X-ray findings were more consistent with an allergic lung problem than with asthmatic bronchitis. Jazairi reported a litany of other symptoms, as varied as joint pain, panic attacks, and blurred vision, but Dr. Johanning suggested that those symptoms were due to alcohol consumption or a psychiatric condition. Although Dr. Johanning observed that Jazairi's interstitial markings have cleared, Jazairi continues to complain of coughing, chest pain, and

4

shortness of breath.

Jazairi sued Royal Oaks and submitted the affidavit of Dr. Johanning in response to a summary judgment motion by Royal Oaks. Royal Oaks moved to strike Dr. Johanning's affidavit under Daubert, and the district court granted the motion. The district court concluded that Dr. Johanning's diagnosis was not scientifically acceptable. The district court reasoned that Dr. Johanning failed to "rule in" mold as the source of Jazairi's symptoms, failed to "rule out" smoking or common allergens like pet dander, and over-relied on the temporal proximity between the mold exposure and the on-set of Jazairi's symptoms. After discarding Dr. Johanning's testimony, the district court held that Jazairi failed to create a genuine issue of material fact about specific causation and granted summary judgment for Royal Oaks.

## II. STANDARD OF REVIEW

We review the district court's exclusion of testimony under Daubert, for an abuse of discretion. Gen. Elec. Co. v. Joiner, 522 U.S. 136, 141, 118 S. Ct. 512, 517 (1997). "We recognize a significant range of choice for the district court on evidentiary issues, which is to say we defer to its decisions to a considerable extent." McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002).

5

## III. DISCUSSION

Jazairi argues that the district court "applied an artificially elevated standard in considering the medical opinion of Dr. Johanning" and erroneously made findings of fact at summary judgment. We disagree. Expert testimony should be admitted "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; see also Daubert, 509 U.S. at 590, 113 S. Ct at 2795. "The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion. . . ." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004). The focus of the reliability inquiry should be on methodology but "even when an expert is using reliable principles and methods . . . there [cannot be] too great an analytical gap between the data and the opinion proffered." Id. at 1276. Expert testimony should not be based solely on temporal proximity and anecdotal evidence. Allison v. McGhan Med. Corp., 184 F.3d 1300, 1312 (11th Cir. 1999).

The medical community recognizes that an allergic reaction similar to Jazairi's can occur when a sensitive individual is exposed to an allergen, so Dr. Johanning's testimony is necessary only to show that the moldy conditions of Jazairi's apartment were the specific cause of her symptoms. Dr. Johannning

6

employed a differential diagnosis methodology; he identified likely causes of Jazairi's symptoms and, by process of elimination, deduced that her symptoms were most likely caused by exposure to a mix of bacteria and mold. The record reflects that differential diagnosis is widely accepted by the medical community.

Although recognizing Dr. Johanning's expertise in environmental illnesses and crediting the methodology of differential diagnosis, the district court concluded that Dr. Johanning's testimony still failed to surpass the Daubert threshold. We agree. The record shows that HP is an allergic reaction that occurs when a hypersensitive individual is exposed to high dosages of mold spores. Dr. Johanning tested Jazairi for mold allergies, found that she had none, and apparently did not conclude that Jazairi suffered symptoms due to exposure to any of the molds that were present in her apartment. To the extent that Dr. Johanning was prepared to testify that the mold in Jazairi's apartment caused her conditions, Dr. Johanning's testimony would have been based solely on temporal proximity and anecdotal evidence. It was within the discretion of the district court to exclude it.

Although Dr. Johanning identified the bacteria Termoactinomyces as the cause of Jazairi's illness, Dr. Johanning's opinion on that issue did not create a genuine issue of material fact. As the district court explained, there is no evidence that Termoactinomyces was present in Jazairi's apartment because the county

7

health department did not test for bacteria. Jazairi submitted some articles from medical and scientific journals that show Termoactinomyces can grow in air conditioners and humidifiers, but there is no evidence linking Termoactinomyces with indoor mold. In fact, Jaziari's articles explain that Termoactinomyces is usually found in hay, straw, and grain. Because there was no evidence that would allow a reasonable inference that Termoactinomyces was present in Jazairi's apartment, summary judgment was appropriate. See, e.g., Sanders v. Cowart, 231 Ga. App. 303, 304, 499 S.E.2d 103, 104 (1998) ("[T]he plaintiff must show a probability rather than merely a possibility that the alleged negligence caused the injury.").

## IV.  CONCLUSION

Summary judgment in favor of Royal Oaks is **AFFIRMED**.