Tᴇʀʀʏ ᴇᴛ ᴀʟ., Aᴘᴘᴇʟʟᴇᴇs, *v.* Cᴀᴘᴜᴛᴏ ᴇᴛ ᴀʟ., Aᴘᴘᴇʟʟᴀɴᴛs.

[Cite as *Terry v. Caputo,* 115 Ohio St.3d 351, 2007-Ohio-5023.]

(No. 2006–0705—Submitted April 3, 2007—Decided October 3, 2007.)

352

**O'DONNELL, J.**

{¶ 1} Lake Investments, Inc., Northcoast Property Management, the W.W. Emerson Company, Leonard Partin, and John Caputo appeal from a decision of the Ottawa County Court of Appeals that reversed the trial court's order of summary judgment in their favor in this mold-exposure case. They contest the appellate court's determination that genuine issues of material fact remain despite the failure of the claimants [1] to offer reliable medical expert testimony to establish proximate cause. Because there is no expert medical testimony to establish specific causation, appellants assert entitlement to summary judgment.

{¶ 2} Initially, we conclude that the appellate court applied the proper causation analysis for cases involving exposure to the presence of mold in a building and the specific injuries suffered by these claimants, an analysis that includes both general and specific causation. We therefore affirm that part of the appellate decision that determined that Dr. Bernstein provided expert medical evidence as to general causation but failed to provide expert medical evidence as to specific causation; but we reverse the appellate court's decision to remand the case to the trial court for consideration of additional evidence regarding specific causation because it erred in determining that genuine issues of material fact existed despite the lack of expert medical testimony on the issue of specific

---

1. The claimants are 15 employees of the Ottawa County Board of Mental Retardation and Development Delay ("MRDD") and eight spouses. They are Louise Terry, Daniel Terry, Kathleen Taylor–Peters, Jennifer Reynolds, William Reynolds, Bonnie Dray, Madeline Rice, Alan Sennich, Trudy Rider, Charles Rider, Ann Chio, Jeffrey Chio, Fran Szabo, Fred Szabo, Beverly Roberts, Garnet LaFountain, Vincent Crabtree, Jackie Bast, John Bast, Michelle Willoughby, Rex Willoughby, Jean Snavely, and Don Snavely.

causation. Because claimants failed to provide expert medical evidence relating to the specific cause of their injuries as an element of their mold-exposure claim, the appellate court could not have found that a genuine issue of material fact existed with respect to specific causation.

## Facts

{¶ 3} In 1996, the Ottawa County Board of MRDD leased several suites in the Buckeye Building located in Port Clinton, Ohio, from W.W. Emerson, a company owned by John Caputo and Leonard Partin. At that time, Northcoast Property Management Company and Lake Investments had the responsibility of maintaining the building. After working in the building for some time, several board employees reported headaches and other physical ailments, which they attributed to damp conditions in the building. At the request of the employees, the Ottawa County MRDD Safety Committee conducted a building inspection; mold was visible in various areas, and a strong mildew odor permeated the premises. Following this inspection, the building was cleaned, and it appeared that the employees' symptoms eased.

{¶ 4} Employees shortly discovered additional mold and claimed that their symptoms returned; as a result, the board vacated the building in August. Subsequent testing revealed five separate species of mold spores, including one fungus (stachybotrys chartarum) that could have explained the physical ailments described by the employees.

{¶ 5} The claimants filed this mold-exposure suit to recover damages from appellants and the Ottawa County MRDD for their injuries. The board, asserting immunity, moved for judgment on the pleadings. The trial court granted that motion, and as a result, the board is no longer a party to this case.

{¶ 6} Claimants retained Jonathan Bernstein, M.D., as an expert, and although he never examined them individually, he did review their medical records and a microbial assessment survey compiled by Robert Clint Jones of Hygienetics Environmental Services, Inc. Using this information, Bernstein prepared a letter for claimants' counsel in which he connected the conditions at the Buckeye Building, specifically the presence of mold, with the symptoms alleged by the claimants. His letter states that the claimants "experienced clinical symptoms consistent with building-related illness that was the result of multiple problems including water incursion leading to mold and mildew growth, poor ventilation and poor filtration." Thereafter, appellants deposed Dr. Bernstein and jointly filed two motions: one for summary judgment and a second to exclude his testimony pursuant to Evid.R. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. The trial court, pursuant to Evid.R. 702, excluded Dr. Bernstein's testimony because (1) he did not base his report on sufficient facts or data, (2) his report was not the product

of reliable principles and methods, and (3) he did not apply the principles and methods reliably to the facts of the case. Moreover, the trial court determined that Dr. Bernstein's testimony lacked a methodology satisfying *Daubert* as to the proximate cause of the claimants' injuries because (1) "he failed to adhere to an established methodology for differential diagnosis by not ruling in the suspected causes and by not ruling out any other possible causes," (2) "he failed to support his conclusions regarding a correlation between exposure to mold, irritants, and allergic reactions and the mold and irritants" present in the building as the proximate cause of the claimants' ailments, (3) "he relied solely on temporal causation to arrive at his conclusions," and (4) "he failed to present a review of the literature to support his conclusions." After excluding Dr. Bernstein's testimony, the trial court granted summary judgment because claimants had presented no other expert testimony in the case.

{¶ 7} The claimants appealed the trial court's decisions to the Ottawa County Court of Appeals. The appellate court reviewed the evidence and determined that the trial court had erred in excluding Bernstein's evidence with respect to general causation, but affirmed the trial court with respect to excluding Bernstein as an expert with regard to specific causation, holding that he did not conduct a reliable differential diagnosis because he relied too heavily upon the temporal relationship between exposure and symptoms and that he failed to rule out other causes of the symptoms exhibited by the claimants. *Terry v. Ottawa Cty. Bd. of Mental Retardation & Dev. Delay,* 165 Ohio App.3d 638, 2006-Ohio-866, 847 N.E.2d 1246, ¶ 63–64, 67.

{¶ 8} The court of appeals then reversed the grant of summary judgment and remanded the case to the trial court because it concluded that the remaining nonexpert evidence, i.e., the microbial survey, the claimants' medical records, and the claimants' testimony during deposition, created a genuine issue of material fact. It further concluded that the claimants "may yet obtain a relevant and reliable expert opinion on the issue of specific causation." Id. at ¶ 88.

{¶ 9} Appellants sought review in this court, and we accepted this discretionary appeal to consider the issue whether expert testimony is required to establish both general and specific causation in mold-exposure cases.

{¶ 10} In conformity with our decision in *Darnell v. Eastman* (1970), 23 Ohio St.2d 13, 52 O.O.2d 76, 261 N.E.2d 114, appellants urge that claimants must present expert testimony to establish both that the substance at issue is capable of causing the condition ("general cause") and that the substance in fact caused the injury of which they complain ("specific cause").

{¶ 11} Claimants maintain, in accord with the opinion of the court of appeals, that they have presented reliable expert testimony establishing general causation

and, further, that they have provided reliable evidence as to specific causation sufficient to overcome summary judgment.

## Causation Analysis

{¶ 12} This court has not previously addressed this specific issue. We recognize, however, that the federal courts have frequently considered it. *Knight v. Kirby Inland Marine, Inc.* (C.A.5, 2007), 482 F.3d 347, 351; *Jazairi v. Royal Oaks Apt. Assoc., L.P.* (C.A.11, 2007), 217 Fed.Appx. 895, 898, 2007 WL 460843; *Roche v. Lincoln Property Co.* (C.A.4, 2006), 175 Fed.Appx. 597, 602–603, 2006 WL 910241; *Norris v. Baxter Healthcare Corp.* (C.A.10, 2005), 397 F.3d 878, 881; *Ruggiero v. Warner–Lambert Co.* (C.A.2, 2005), 424 F.3d 249, 251–252, fn. 1; *In re Hanford Nuclear Reservation Litigation* (C.A.9, 2002), 292 F.3d 1124, 1133; *Heller v. Shaw Industries, Inc.* (C.A.3, 1999), 167 F.3d 146, 165; *Raynor v. Merrell Pharmaceuticals, Inc.* (C.A.D.C.1997), 104 F.3d 1371, 1376.

{¶ 13} These courts have established "a two-step process in examining the admissibility of causation evidence in toxic tort cases." *Knight*, 482 F.3d at 351; see also *Raynor*, 104 F.3d at 1376. The first step requires a claimant to offer evidence establishing general causation—that is, " 'whether a substance is capable of causing a particular injury or condition in the general population.' " *Knight*, 482 F.3d at 351, quoting *Merrell Dow Pharmaceuticals, Inc. v. Havner* (1997), 40 Tex.Sup.Ct.J. 846, 953 S.W.2d 706.

{¶ 14} The second step, which applies only after a court finds competent evidence establishing general causation, requires a claimant to offer specific causation evidence. This evidence relates to " 'whether a substance caused a particular individual's injury.' " Id., quoting *Merrell Dow Pharmaceuticals, Inc. v. Havner* (1997), 40 Tex.Sup.Ct.J. 846, 953 S.W.2d 706.

{¶ 15} We find this two-step analysis to be reasonable and therefore adopt it in Ohio. To present a prima facie case involving an injury caused by exposure to mold or other toxic substance, a claimant must establish (1) that the toxin is capable of causing the medical condition or ailment (general causation), and (2) that the toxic substance in fact caused the claimant's medical condition (specific causation).

## *Daubert* and *Darnell*

{¶ 16} In *Darnell*, we stated, "Except as to questions of cause and effect which are so apparent as to be matters of common knowledge, the issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry and *must* be established by the opinion of medical witnesses competent to express such opinion." (Emphasis added.) 23 Ohio St.2d 13, 52 O.O.2d 76, 261 N.E.2d 114, syllabus. Establishing general causation and specific causation in cases involving exposure to mold or other toxic substances

involves a scientific inquiry, and thus causation must be established by the testimony of a medical expert. Trial courts have broad discretion in determining the admissibility of expert testimony, subject to review for an abuse of discretion. See *Kumho Tire Co., Ltd. v. Carmichael* (1999), 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238. In general, courts should admit such testimony when material and relevant, in accordance with Evid.R. 702, which permits a witness to testify as an expert in the following circumstances:

{¶ 17} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

{¶ 18} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

{¶ 19} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

{¶ 20} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

{¶ 21} "(2) The design of the procedure, test, or experiment reliably implements the theory;

{¶ 22} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

{¶ 23} As we noted in *State v. Nemeth* (1998), 82 Ohio St.3d 202, 207, 694 N.E.2d 1332, "Courts should favor the admissibility of expert testimony whenever it is relevant and the criteria of Evid.R. 702 are met."

{¶ 24} The United States Supreme Court in *Daubert,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469, interpreted Fed.R.Evid. 702, the federal version of Evid.R. 702, as vesting the trial court with the role of gatekeeper. See also *Kumho,* 526 U.S. at 152, 119 S.Ct. 1167, 143 L.Ed.2d 238. This gatekeeping function imposes an obligation upon a trial court to assess both the reliability of an expert's methodology and the relevance of any testimony offered before permitting the expert to testify. We adopted this role for Ohio trial judges in *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 687 N.E.2d 735.

{¶ 25} The test for reliability requires an assessment of the validity of the expert's methodology, by applying with flexibility several factors set forth in *Daubert.* 509 U.S. at 592–593, 113 S.Ct. 2786, 125 L.Ed.2d 469. The trial court should first assess whether the method or theory relied upon has been tested.

Id. at 593, 113 S.Ct. 2786, 125 L.Ed.2d 469. Next, it should consider whether the theory has been the subject of peer review, and then whether the method has a known or potential error rate. Id. at 593–594, 113 S.Ct. 2786, 125 L.Ed.2d 469. Finally, *Daubert* instructs trial courts to look at whether the theory has gained general acceptance in the scientific community. Id. at 594, 113 S.Ct. 2786, 125 L.Ed.2d 469. None of these factors, of course, is dispositive of the inquiry, and when gauging the reliability of a given expert's testimony, trial courts should focus "solely on principles and methodology, not on the conclusions" generated. Id. at 595, 113 S.Ct. 2786, 125 L.Ed.2d 469.

{¶ 26} The trial court's *Daubert* responsibilities, however, do not end with reliability, because the trial court's gatekeeping function also requires it to judge whether an expert's testimony is " 'relevant to the task at hand' in that it logically advances a material aspect of the proposing party's case." *Valentine v. PPG Industries, Inc.* (2004), 158 Ohio App.3d 615, 2004-Ohio-4521, 821 N.E.2d 580, quoting *Daubert*, 509 U.S. at 597, 113 S.Ct. 2786, 125 L.Ed.2d 469. This aspect, which courts have colloquially labeled "fit," requires a " 'connection between the scientific research or test result * * * and particular disputed factual issues in the case.' [*U.S. v.*] *Downing* [ (C.A.3, 1985), 753 F.2d 1224, 1237]." *In re Paoli R.R. Yard PCB Litigation* (C.A.3, 1994), 35 F.3d 717, 743. Reliability and relevance are not mutually exclusive findings, and they may overlap in some instances. As one federal court stated, "[A] determination regarding the scientific validity of a particular theory requires not only an examination of the trustworthiness of the tested principles on which the expert opinion rests, but also an analysis of the reliability of an expert's *application* of the tested principals [sic] to the particular set of facts at issue." (Emphasis sic.) *Cavallo v. Star Ent.* (E.D.Va.1995), 892 F.Supp. 756, 762–763.

{¶ 27} Two federal decisions fortify our conclusions in this case. In *Roche v. Lincoln Property Co.* (C.A.4, 2006), 175 Fed.Appx. 597, 2006 WL 910241, Christopher and Juanita Roche filed suit against Lincoln Property Company, their landlord, alleging exposure to toxic mold in their apartment. Id. at 599. They retained Dr. Richard Bernstein, a medical expert, who relied on medical records, relevant medical literature, and the report of an industrial hygienist in conducting a differential diagnosis. Id. at 602. The court of appeals affirmed the trial court's order exercising its gatekeeping role pursuant to *Daubert* finding the expert's testimony to be unreliable, because the expert had been unable to determine that the particular types of mold found in the apartment were the cause of the ailments. The appellate court held that without Dr. Bernstein's testimony, the plaintiffs would not establish that the mold in their apartment was the proximate cause of their injuries.

{¶ 28} In *Jazairi v. Royal Oaks Apt. Assoc., L.P.* (C.A.11, 2007), 217 Fed.Appx. 895, 2007 WL 460843, which involved a similar claim based on exposure to mold, Jazairi sued Royal Oaks Apartment Associates, her landlord, complaining that she suffered from memory loss, fatigue, and malaise because of interstitial fibrosis caused by "several genus [sic] of mold" present in the apartment. Id. at 896. In response to a motion for summary judgment, Jazairi submitted an affidavit from her expert, a doctor of environmental medicine with a specialty in mold-caused illness. Royal Oaks moved to strike the affidavit pursuant to *Daubert*, and the trial court granted the motion, concluding that the expert failed to rule in mold as the cause of the symptoms and failed to rule out smoking or common allergens, and relied too heavily on the temporal proximity of the exposure to the onset of symptoms. Id. at 897. The court of appeals affirmed, reasoning that the expert's testimony "would have been based solely on temporal proximity and anecdotal evidence." Id. at 898. Accordingly, the court concluded that the expert could not testify that the mold present in the apartment caused the injuries alleged. Id.

{¶ 29} In this case, the court of appeals correctly analyzed the issue of general and specific causation and concluded that Dr. Bernstein's testimony was reliable and relevant on the issue of general causation. That portion of the judgment is affirmed.

{¶ 30} It further concluded that Dr. Bernstein's invalid differential diagnosis rendered his testimony unreliable on the issue of whether the claimants' illnesses were caused by the exposure to mold, and thus the court determined that the trial court did not abuse its discretion in barring Bernstein's testimony on specific causation. That portion of the judgment is also affirmed.

{¶ 31} However, the appellate court reversed the trial court's grant of summary judgment, upon a de novo review, after concluding that the inferences from the microbial assessment and from the claimants' depositions raised a genuine issue of material fact regarding specific causation. In accordance with our foregoing analysis, expert medical testimony is necessary to establish that particular types of mold found in the workplace were the specific cause of the claimants' ailments. Without expert testimony to establish both general causation and specific causation, a claimant cannot establish a prima facie case of exposure to mold or other toxic substance. Accordingly, this portion of the appellate opinion is reversed, and we reinstate the judgment of the trial court granting summary judgment to appellants.

Judgment affirmed in part
and reversed in part.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., dissents.

---

PFEIFER, J., dissenting.

{¶ 32} The majority opinion misses the point. The appellate court too found that the plaintiffs needed to present evidence on general and specific causation and that Dr. Bernstein's testimony on the issue of specific causation was unreliable. To that extent, the majority opinion is a rehash of the lower court's decision. Only in its last paragraph does the majority opinion diverge from that of the appellate court. The appellate court held that on the issue of specific causation, the plaintiffs had offered enough evidence beyond Dr. Bernstein's testimony to demonstrate the existence of a genuine issue of material fact sufficient to preclude summary judgment. The majority dismisses that essential holding—the most relevant issue of the case before us—in two sentences. The majority writes: "In accordance with our foregoing analysis, expert medical testimony is necessary to establish that particular types of mold found in the workplace were the specific cause of the claimant's ailments. Without expert testimony to establish both general causation and specific causation, a claimant cannot establish a prima facie case of exposure to mold or other toxic substances." But the majority does not address the appellate court's holding that the plaintiffs *had* provided enough expert testimony to survive summary judgment.

{¶ 33} The majority cites the statement from *Darnell v. Eastman* (1970), 23 Ohio St.2d 13, 52 O.O.2d 76, 261 N.E.2d 114, syllabus, that "the issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry and must be established by the opinion of medical witnesses competent to express such opinion." However, as this court held in *Shilling v. Mobile Analytical Servs., Inc.* (1992), 65 Ohio St.3d 252, 602 N.E.2d 1154, syllabus, an expert testifying as a medical witness need not be a physician:

{¶ 34} "A witness who is not a physician, but who qualifies as an expert under Evid.R. 702, may give evidence that would be relevant to diagnosis of a medical condition if the testimony is within the expertise of the witness."

{¶ 35} The appellate court held that the testimony of the plaintiffs' expert industrial hygienist, in combination with testimony from the plaintiffs and their doctors regarding the plaintiffs' medical conditions, provided sufficient evidence to withstand summary judgment on the specific-causation issue. Unlike *Darnell,* this is a summary judgment case. In *Darnell,* the plaintiffs lacked medical testimony *at trial.* In *Valentine v. Conrad,* 110 Ohio St.3d 42, 2006-Ohio-3561,

850 N.E.2d 683, which was decided on summary judgment, this court found that the plaintiffs had presented *no* evidence as to general causation, that the plaintiffs had had *no* expert testimony that the substances that Valentine had encountered on his job had been proven to cause glioblastoma multiforme.

{¶ 36} Here, we have a different story. Here, we are at the summary judgment stage, where, pursuant to Civ.R. 56, trial courts are required to construe evidence in a light most favorable to the nonmoving party. In this case, the plaintiffs have presented evidence that they were exposed to certain types of molds in their workplace, that the kind of molds they were exposed to can cause certain health problems, and that the plaintiffs suffered from those health problems. They have presented evidence on every essential element of their claims. Whether they have presented enough evidence to succeed at trial is meaningless at this point. They have done enough to clear the low hurdle of summary judgment. Unfortunately, the majority opinion has turned that low hurdle into a brick wall.

————

Murray & Murray Co., L.P.A., and Margaret M. Murray, for appellees.

Robison, Curphey & O'Connell, Thomas J. Antonini, and Mark A. Ozimek, for appellants.