NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0474n.06

No. 23-3184

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| JOHN NOCILLA, JR., | ) | **FILED**<br>Nov 14, 2023<br>KELLY L. STEPHENS, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| | ) | |
| | ) | |
| JOE BRIDGES; R & B TRUCKING, INC., | ) | |
| Defendants-Appellees. | ) | OPINION |
| | ) | |

Before: WHITE, NALBANDIAN, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. In this diversity case, we must consider the scope of Ohio's rule that a plaintiff must use expert testimony to prove that a defendant's negligence caused an injury. John Nocilla, a truck driver, alleges that he was walking toward a warehouse when another driver accidentally ran a semitruck into him while attempting to park. Nocilla confronted this driver, an African American man named Joe Bridges, using a mix of profanities and racial slurs. Bridges denied hitting Nocilla. And Nocilla's offensive language led his employer to fire him.

Nocilla brought a negligence claim against Bridges. He sought damages for back, shoulder, and neck injuries, a laceration on his arm, anxiety, an inability to sleep, lost wages, and pain and suffering. But Nocilla's own medical expert opined that the accident would not have caused his back, shoulder, and neck problems. So the district court granted summary judgment to Bridges because Nocilla lacked expert analysis connecting these injuries to the accident. Nocilla

responds that the district court ignored his other claimed injuries. We agree in part. Nocilla did not need an expert to prove that the accident caused the external cut on his arm or the pain and suffering that it caused. Otherwise, he has failed to create a genuine issue of material fact on this causation element for these other injuries. We thus affirm in part and reverse in part.

I

The parties disagree over what happened in this case. Because the district court granted summary judgment to Bridges, we resolve all evidentiary disputes in favor of Nocilla's version of the events. *See DeCrane v. Eckart*, 12 F.4th 586, 591 (6th Cir. 2021).

Nocilla has held some type of commercial driver's license since 1973. About a decade later, he obtained his license to become an "over-the-road" trucker driving 18-wheeler semitrucks long distances. He worked for several different companies for the next thirty years. During this time, he settled in Minnesota. Nocilla eventually started to drive semitrucks for Paper Transport, Inc., from his home in Minnesota to destinations in different States.

In April 2019, Nocilla received an assignment to drive a load of paper products to an Office Depot warehouse outside Cincinnati, Ohio. A Paper Transport dispatcher told Nocilla to drop off the load at 3:30 a.m. on April 23. He had previously driven to this warehouse and would sleep in his truck outside the gate until the designated time. Nocilla followed the same practice on this occasion. Around 3:30 a.m., he walked from his truck to the warehouse intercom and told the Office Depot staff that he had arrived to deliver a load for Paper Transport. The staff told him to park his truck "in front of all the loading dock doors" and walk to the office with his paperwork before backing into a specific dock. Nocilla Dep., R.18, PageID 226. He did as instructed.

To get to the office, Nocilla had to walk past the front hoods of other semitrucks that had already backed into specific dock doors to unload their goods into the warehouse. His path took

him about four feet away from these trucks with his left side facing their front ends. After going by a few of them, Nocilla approached an older white "Freightliner." *Id.*, PageID 227. This semi was "running" but a driver did not appear to be in the cabin. *Id.* Nocilla made it beyond the truck's passenger side when it suddenly lurched forward. The truck moved for about ten feet, hitting Nocilla on his "whole left side." *Id.*, PageID 228. He did not fall down. Instead, Nocilla "held on" to the left headlight and yelled at the driver as the truck moved. *Id.*, PageID 227–28. The driver stopped, and Nocilla let go of the headlight. The truck then went back and forth in quick succession because the driver was apparently trying to park it in the dock. By this time, however, Nocilla had gotten out of the way and stood near the driver's side door.

No more than a minute passed between when the truck pulled forward and when Nocilla spoke with the driver after he finished parking. Once the driver opened the driver's side door, Nocilla figured out why he could not see him previously. The driver had set his "air lifted" seat "down" as far as it could go. *Id.*, PageID 227. A very upset Nocilla began to scream at the driver, who was an African American. Nocilla admits to using "vulgar language" and "racial slurs," including "the N word." *Id.*, PageID 229.

The driver turned out to be Bridges. A Tennessean, Bridges obtained his commercial driver's license in 1996. At the time of this incident, he was a long-distance truck driver working as an "owner/operator" with R & B Trucking. Bridges Dep., R.19, PageID 274. Bridges had just taken a load for R & B from Memphis to the Ohio warehouse. His wife joined him on the trip. According to Bridges, he finished parking his truck at the warehouse when Nocilla came "running around" the front "saying I hit him" and using a mix of profanities and racial slurs. *Id.*, PageID 288. Bridges denied hitting Nocilla. His wife, who sat in the passenger's seat, also did not see

anyone on that side of his truck. But Bridges decided not to respond to Nocilla's verbal onslaught to ensure that things did not escalate.

After Nocilla stopped yelling at Bridges, he walked into the warehouse office. Nocilla asked the Office Depot staff to call the police and an ambulance. The staff allegedly refused to make these calls and demanded that he move his truck off the property before he alerted the authorities himself. So Nocilla walked back to his truck. At this point, Bridges allegedly approached him and said "I'm sorry for hitting you." Nocilla Dep., R.18, PageID 231. (Bridges denied this.) Nocilla drove his truck back outside the gate. He then called 911.

The police arrived ten minutes later, and an ambulance followed right behind. An officer took statements from both Nocilla and Bridges. Nocilla then asked the medical personnel to take him to the hospital. The accident allegedly caused an inch-long cut on the top of his left forearm just below his elbow. Nocilla also felt a "sharp pain" in his left shoulder and neck. *Id.*, PageID 229–30.

The ambulance drove Nocilla to a nearby hospital. His cut had stopped bleeding by the time he got there. A doctor cleaned this wound and took x-rays of Nocilla's arm. But the cut required no stitches, and the x-rays apparently came back negative for any broken bones. The doctor also gave Ibuprofen or Tylenol to Nocilla for the neck and shoulder pain. These injuries did not require any type of brace or sling. The hospital discharged Nocilla around 6:00 a.m. with instructions to follow up with his doctor.

A taxi took Nocilla back to his truck. He then returned through the warehouse gates and parked his truck in a dock for the delivery. The staff unloaded the paper products.

After this delivery, Nocilla's company assigned him another load. He picked up this shipment from a different place and drove it back to Minnesota in about a day and a half.

He received unwanted news upon his return home. When he parked his truck, a Paper Transport dispatcher called him and told him that he "was fired" and should "clean [his] stuff out of the truck." *Id.*, PageID 234. The company let him go because of his use of profanity and racial slurs during the encounter with Bridges. Nocilla's termination letter also mentioned that this incident had been the third one in which he had used "vulgar language." *Id.*

Nocilla has not worked since his termination. He had been planning to retire when he turned 63 in November 2019. He also testified that he had been visiting a lot of doctors because he was "in so much pain" from the accident. *Id.* When he got back to Minnesota, he saw a doctor for his shoulder. He has since had an injection in his shoulder and received physical therapy. But these treatments have not helped. He still suffers from come-and-go sharp pain in his shoulder and neck. His left hand also occasionally goes numb.

Nocilla sued Bridges and R & B Trucking in federal district court, invoking its diversity jurisdiction under 28 U.S.C. § 1332(a)(1). He alleged that Bridges negligently hit him and that R & B negligently entrusted Bridges with the truck. Nocilla sought damages for his pain and suffering, injuries, and medical costs.

To help establish his damages, Nocilla relied on an expert orthopedic surgeon: John W. Wolf Jr., M.D. But this expert likely did not offer the hoped-for testimony. Dr. Wolf noted that he could not "come to any firm conclusions" about Nocilla's injuries. Wolf Rep., R.20-1, PageID 392. Wolf began by discussing the shoulder injury. An MRI had revealed a slight tear in Nocilla's left rotator cuff, but Wolf opined that the accident was "unlikely" to have caused it. *Id.*, PageID 393. Wolf added that the accident also would not have caused the "associated degenerative changes" in Nocilla's shoulder "seen on the MRI[.]" *Id.* Wolf next turned to the neck and hand injuries. He opined that an MRI of Nocilla's spine was "rather typical" for "a man in his mid 60s"

and that nothing showed problems that an accident would have caused. *Id.* The report also noted that a "neuropsychiatric evaluation" revealed that Nocilla's mental struggles had arisen from his loss of a job rather than from any physical injuries. *Id.*, PageID 394. Indeed, Wolf largely agreed with the defense expert by noting that it was "entirely possible" that Nocilla's "current complaints are out of proportion to objective findings[.]" *Id.*, PageID 395. He also found "no evidence in any of these tests of any acute injury" that Nocilla claimed to have suffered from the accident. *Id.*, PageID 394.

After discovery, the district court granted summary judgment to Bridges and R & B Trucking. *Nocilla v. Bridges*, 2023 WL 1099749, at *4 (S.D. Ohio Jan. 30, 2023). Starting with Nocilla's negligence claim, the court held that Ohio law required him to produce expert testimony to show the alleged accident caused his alleged injuries. *Id.* at *3. And since Dr. Wolf's report did not connect the two, the court held that Nocilla failed to prove causation. *Id.* Turning to Nocilla's negligent-entrustment claim, the court held that Nocilla failed to show that Bridges was so unqualified to drive a truck that R & B should not have affiliated with him. *Id.* at *3–4.

Nocilla appealed. He does not challenge the ruling for R & B. We thus need only consider his negligence claim against Bridges. We review the grant of summary judgment on that claim de novo. *See Davis v. Echo Valley Condominium Ass'n*, 945 F.3d 483, 489 (6th Cir. 2019).

II

The parties (from Minnesota and Tennessee) agree that Ohio law governs their dispute because the alleged accident happened in an Ohio warehouse. Given their agreement on this choice-of-law issue, we may assume that Ohio law applies. *See AtriCure, Inc. v. Meng*, 12 F.4th 516, 525 (6th Cir. 2021). Like most States, Ohio requires a plaintiff to meet four well-known elements to prove a negligence claim: duty, breach, causation, and damages. *See Stinson v.*

*England*, 633 N.E.2d 532, 537 (Ohio 1994). That is, the defendant must have owed the plaintiff a duty of care; the defendant must have breached this duty; the plaintiff must have suffered an injury; and a causal connection must exist between the breach and the injury. *See Rieger v. Giant Eagle, Inc.*, 138 N.E.3d 1121, 1125 (Ohio 2019).

Ohio plaintiffs sometimes need expert testimony to prove one or more of these elements. They must rely on an expert witness to prove an element of a claim whenever the element addresses matters "beyond the common knowledge and understanding of a layperson." *White v. Leimbach*, 959 N.E.2d 1033, 1040 (Ohio 2011). In perhaps the most obvious example of this rule, the Ohio Supreme Court has long held that a plaintiff pursuing a medical-malpractice claim generally must present expert testimony that a doctor's treatment fell below the standard of care. *See Ramage v. Cent. Ohio Emergency Servs., Inc.*, 592 N.E.2d 828, 833 (Ohio 1992). (Nocilla does not dispute that Ohio's state-law rules concerning expert testimony apply in this case, so we can assume that the rules are "substantive" and extend to federal proceedings under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). *Cf. Madej v. Maiden*, 951 F.3d 364, 373–74 (6th Cir. 2020).)

This case concerns the causation element. For this element, too, the Ohio Supreme Court has held that a plaintiff must present scientific or medical evidence if an untrained layperson would not have the expertise necessary to decide whether a defendant's actions could cause a plaintiff's injury. *See Terry v. Caputo*, 875 N.E.2d 72, 77 (Ohio 2007); *Eicher v. U.S. Steel Corp.*, 512 N.E.2d 1165, 1168 (Ohio 1987); *Darnell v. Eastman*, 261 N.E.2d 114, 116 (Ohio 1970). So, for instance, a plaintiff must rely on an expert to prove that a defendant's failure to keep mold out of a workspace proximately caused the plaintiff's headaches and other ailments. *See Terry*, 875 N.E.2d at 79. And a plaintiff must rely on an expert to prove that a workplace ankle injury could cause a later heart condition. *Fox v. Indus. Comm'n of Ohio*, 125 N.E.2d 1, 3, 6 (Ohio 1955); *see*

*also Stacey v. Carnegie-Ill. Steel Corp.*, 101 N.E.2d 897, 899–901 (Ohio 1951). Conversely, the plaintiff need not present expert causation evidence if a layperson could recognize that the defendant's conduct caused the injury. *See White Motor Corp. v. Moore*, 357 N.E.2d 1069, 1071–72 (Ohio 1976). A worker thus did not need an expert to prove that a beam that fell on his knees and pinned him to the floor caused the "bruise above the left patella" that developed shortly afterward. *See id.*; *see also Bowling v. Indus. Comm'n*, 60 N.E.2d 479, 482 (Ohio 1945).

Ohio's appellate courts have repeatedly applied this precedent in cases involving car accidents or slip and falls. *See, e.g.*, *Pietrangelo v. Hudson*, 2023 WL 2534132, at *1, *5 (Ohio Ct. App. Mar. 16, 2023); *Heard v. Dayton View Commons Homes*, 106 N.E.3d 327, 331–33 (Ohio Ct. App. 2018); *Polen v. Gilmore*, 2001 WL 1155847, at *2 (Ohio Ct. App. Sept. 25, 2001); *Dean v. West*, 2000 WL 1335068, at *1, *3–4 (Ohio Ct. App. Sept. 14, 2000). In these cases, the courts have tied the need for expert testimony to the "type of injury" that a plaintiff asserts. *Wright v. City of Columbus*, 2006 WL 391823, at *5 (Ohio Ct. App. Feb. 10, 2006). If an accident caused an injury involving the "internal complexities of the body" or if it caused "subjective" pain with no objective manifestation, the courts generally require expert testimony. *Wood v. Estate of Batta*, 2008 WL 795127, at *4 (Ohio Ct. App. Mar. 27, 2008); *Rogers v. Armstrong*, 2002 WL 397728, at *3 (Ohio Ct. App. Mar. 15, 2002). If, by contrast, the injury is "readily observable or understandable," the plaintiff may rely on lay testimony to show the required causal connection. *Chilson v. Conrad*, 2006 WL 1816535, at *3 (Ohio Ct. App. July 3, 2006); *see Keller v. Chism*, 136 N.E.3d 27, 32–33 (Ohio 2019); *Canterbury v. Skulina*, 2001 WL 1561479, at *4–5 (Ohio Ct. App. Dec. 7, 2001).

In this case, Nocilla alleges several different injuries. To decide whether he needed to introduce expert testimony, we must categorize each one. Is it "internal and elusive"? *Wood*, 2008

WL 795127, at *4. Or did he have "observable external evidence" of the injury at the time of the accident? *Chilson*, 2006 WL 1816535, at *3 (citation omitted). The former injury would require expert testimony, but the latter would not. *Id.* We will take his injuries in turn.

As for his primary injury, Nocilla testified that he immediately felt (and continues to suffer from) neck, shoulder, and back injuries after the accident. Nocilla Dep., R.18, PageID 229, 232, 234, 236–38. Yet "overwhelming" Ohio caselaw requires plaintiffs to introduce expert medical evidence to substantiate subjective (and invisible) neck, shoulder, or back injuries. *Clough v. Watkins*, 2020 WL 3447762, at *9 (Ohio Ct. App. June 19, 2020); *see, e.g.*, *Davie v. Nationwide Mut. Ins. Co.*, 2015 WL 179287, at *3 (Ohio Ct. App. Jan. 15, 2015); *Argie v. Three Little Pigs, Ltd.*, 2012 WL 554388, at *3 (Ohio Ct. App. Feb. 16, 2012); *Lane v. Bur. of Workers' Comp.*, 2012 WL 175418, at *10 (Ohio Ct. App. Jan. 20, 2012); *Bennett v. Goodremont's, Inc.*, 2011 WL 941322, at *3–4 (Ohio Ct. App. Mar. 18, 2011); *Heard*, 106 N.E.3d at 331; *Wright*, 2006 WL 391823, at *5; *Rogers*, 2002 WL 397728, at *2–3; *Polen*, 2001 WL 1155847, at *2. Given this caselaw, even Nocilla does not dispute that he had to present expert testimony to establish a causal connection between the accident and these injuries. *See* Appellant's Br. 11–14. Nocilla also does not dispute the district court's conclusion that Dr. Wolf's expert report would not allow a rational jury to connect these injuries to the accident because he disavowed any connection between the two. *Bridges*, 2023 WL 1099749, at *3.

So how does Nocilla respond? He notes that the district court ignored his "other claimed injuries": a laceration, heightened anxiety, loss of sleep, lost wages, and pain and suffering. Appellant's Br. 12. Nocilla has a point. The district court did not mention these injuries in its analysis. But he can create a genuine issue of material fact over this causation element only for the first of the injuries (the laceration) and the pain and suffering associated with it.

9

*Laceration*. Nocilla initially claims that Bridges's truck caused a "one-inch laceration" on his arm when it hit him. *Id.* He did not need expert testimony to support this injury because it manifested itself with "observable external evidence." *Chilson*, 2006 WL 1816535, at *3 (citation omitted). Ohio courts, for example, have held that an expert need not testify that twisting a leg caused "swelling and redness" in the knee, *id.*, at *4, that a "physical impact" caused a "bruise or a fracture," *Tate v. Nat. Nails*, 2019 WL 4887204, at *4 (Ohio Ct. App. Oct. 3, 2019), or that a dog's clawing caused "scratches," *Keller*, 136 N.E.3d at 34. So too here, an expert did not need to testify that Nocilla's arm was visibly cut and even bled when a truck (allegedly) ran into him.

Bridges responds that Nocilla's lay testimony alone could not permit a rational jury to find that his truck caused this cut. Bridges reasons that Nocilla's testimony should have led him to suffer a cut on the bottom of his forearm (not the top) because Nocilla claims that he had been hanging onto the headlight with this arm. Appellees' Br. 15. Yet Bridges's response about whether the truck really caused this injury "is a matter of credibility of witnesses, not scientific inquiry" requiring expert testimony. *White Motor Corp.*, 357 N.E.2d at 1072. Besides, Nocilla's testimony sufficed to create a dispute of fact. He stated that his arm was bleeding from a laceration "[i]mmediately" after the accident. Nocilla Dep., R.18, PageID 229. And "medical records" described the laceration as an "inch" in length. *Id.* So Bridges's request for summary judgment with respect to this injury fails to take the facts in the light most favorable to Nocilla—as we must at this stage. *See Gambrel v. Knox County*, 25 F.4th 391, 404 (6th Cir. 2022).

*Mental Injuries*. Nocilla next asserts that he has suffered from "anxiety" after the accident and that this anxiety has caused him to have "trouble sleeping." Nocilla Resp., R.20-1, PageID 355. Yet Ohio courts have held that plaintiffs must present expert testimony to establish that an accident caused these types of mental injuries because that causation issue falls outside a lay juror's

common knowledge. *Pietrangelo*, 2023 WL 2534132, at *7. In one case, for example, an appellate court held that the plaintiff needed to offer expert causation evidence to prove that a car accident had caused his "mental fog" and "depression." *Id.* In another case, a court held that the plaintiff needed to offer this type of evidence to prove that a car accident had caused his "loss of sleep[.]" *Dean*, 2000 WL 1335068, at *4; *see also Ogolo v. Greater Cleveland Reg'l Transit Auth.*, 2013 WL 5970420, at *3 (Ohio Ct. App. Nov. 7, 2013); *Ingram v. K-Mart Corp.*, 1993 WL 290133, at *4 (Ohio Ct. App. July 29, 1993) (lead opinion). Nocilla's case, if anything, proves why this rule exists. Dr. Wolf's expert report noted that a different mental-health expert had opined that Nocilla's "anxiety" had arisen from his lost "job" and that "no medical evidence whatsoever" connected this anxiety to any physical injuries from the accident. Wolf Rep., R. 20-1, PageID 394 (citation omitted). Ohio's expert-opinion requirement thus dooms Nocilla's claim for damages based on his anxiety and lack of sleep.

*Pain and Suffering*. Nocilla also seeks to recover for his "pain and suffering." Appellant's Br. 12. At first blush, Ohio decisions seem to diverge over whether a plaintiff must use an expert to connect this harm to an accident. On the one hand, Nocilla cites several cases noting that "lay testimony" alone suffices "to prove past pain and suffering" because this harm involves "subjective feelings" and the plaintiff's "testimony is the only direct proof of" the harm. *Keller*, 136 N.E.3d at 32 (quoting *Barker v. Netcare Corp.*, 768 N.E.2d 698, 711 (Ohio Ct. App. 2001)); *Youssef v. Jones*, 602 N.E.2d 1176, 1179 (Ohio Ct. App. 1991); *Turner v. Barrett*, 426 N.E.2d 1193, 1194 (Ohio Ct. App. 1980). On the other hand, many cases involving neck or back injuries require expert testimony even though the plaintiff seeks only to recover for "*pain* to the neck, back, and shoulders." *Wood*, 2008 WL 795127, at *4 (emphasis added). These courts reason that such

subjective harms are "internal and elusive" because they "are not normally visible, like a bruise or a break." *Bennett*, 2011 WL 941322, at *3; *see Wright*, 2006 WL 391823, at *5.

But we can reconcile this caselaw on the ground that past pain and suffering is *derivative* of a physical injury. And a plaintiff generally does not need expert testimony to prove this pain and suffering if the plaintiff has already established a causal connection between the defendant's conduct and the underlying *primary* "injury" from which the "pain and suffering" flows. *Mahaffey v. Stenzel*, 1999 WL 50229, at *6 (Ohio Ct. App. Jan. 25, 1999). The plaintiff can establish the "causation element" for this primary injury through "expert medical testimony" or through "proof of a cause which is so apparent as to be common knowledge[.]" *Id.* Once the plaintiff does so, however, the plaintiff does not need expert testimony for the derivative pain and suffering. *Id.*

Under this framework, Nocilla can seek damages for pain and suffering in part. He may not seek damages for the pain and suffering caused by his alleged neck, shoulder, and back injuries, or his mental injuries. Those internal injuries required expert testimony—something that he failed to provide. So his failure to create a genuine issue of material fact on those primary injuries dooms his derivative request for pain-and-suffering damages tied to them. *See id.*; *see also Wright*, 2006 WL 391823, at *5; *Rogers*, 2002 WL 397728, at *3. Conversely, Nocilla did not need expert testimony to prove that the truck accident caused his laceration. So he can seek derivative pain-and-suffering damages using his own testimony for this (minor) injury. *See Mahaffey*, 1999 WL 50229, at *6; *see also Turner*, 426 N.E.2d at 1194.

*Lost Wages*. Lastly, Nocilla claims that Bridges's conduct caused him to suffer "lost wages" and that he did not need an expert to compute this financial harm. Appellant's Br. 12; Reply Br. 3–4. We do not need to reach that issue because his claim fails on causation grounds. Nocilla concedes that his employer, Paper Transport, fired him because of his *offensive*

*language*—not the *accident*. Nocilla Dep., R.18, PageID 234. But he claims this fact does not matter because he would not have used the offensive language if Bridges had not run into him with his truck. Because Bridges caused Nocilla to use racial slurs and since those racial slurs caused Paper Transport to fire him, this argument goes, Bridges caused (and should be held liable for) his termination. This chain of reasoning may prove *but-for* causation. *See Rieger*, 138 N.E.3d at 1126. But Ohio tort law also requires Nocilla to prove *proximate* causation. *See id.* at 1125; *see, e.g.*, *Simmerer v. Dabbas*, 733 N.E.2d 1169, 1173–74 (Ohio 2000) (plurality opinion).

To establish proximate causation, Nocilla must show that no "intervening cause" broke the causal chain between Bridges's (allegedly) negligent conduct and Nocilla's harm. *Mussivand v. David*, 544 N.E.2d 265, 272 (Ohio 1989) (quoting *Cascone v. Herb Kay Co.*, 451 N.E.2d 815, 816 (Ohio 1983)); *Pendrey v. Barnes*, 479 N.E.2d 283, 284 (Ohio 1985) (per curiam). The Ohio Supreme Court has adopted various principles to decide when an intervening cause breaks this causal chain. It has, for example, noted that a "conscious and responsible" intervening actor will relieve a negligent party of liability if the actor "could and should have eliminated the hazard" that caused the harm. *Thrash v. U-Drive-It Co.*, 110 N.E.2d 419, 422 (Ohio 1953); *see Mussivand*, 544 N.E.2d at 273. It has also suggested that a negligent party cannot be held liable for an intervening actor's conduct if that conduct causes harm that was not "reasonably foreseeable" to the negligent party. *Mussivand*, 544 N.E.2d at 272; *see Simmerer*, 733 N.E.2d at 1173 (plurality opinion).

While proximate causation generally raises a factual question for the jury, *Cascone*, 451 N.E.2d at 820, a court may, of course, resolve such a question at the summary-judgment stage if the plaintiff's evidence fails to create a "genuine issue of material fact," *Davis*, 945 F.3d at 494. And here, every reasonable juror would have to find that this intervening-cause rule applies. Nocilla *himself* was the "intervening" cause of his termination. *Cascone*, 451 N.E.2d at 820.

13

He "could and should" have eliminated the risk of his financial harm simply by avoiding the offensive language that he used. *Thrash*, 110 N.E.2d at 422. And when identifying the various harms that might arise from negligently running into someone, no truck driver would "reasonably foresee[]" that the victim's foul language would lead the victim's employer to fire him. *Simmerer*, 733 N.E.2d at 1173 (plurality opinion). So Bridges did not proximately cause Nocilla's financial harm.

* * *

We affirm in part and reverse in part. We affirm the grant of summary judgment to R & B Trucking because Nocilla raises no arguments concerning this defendant. We also affirm the district court's grant of summary judgment to Bridges with respect to Nocilla's claimed injuries to his back, neck, and shoulders, including any pain or suffering arising from these injuries. And we affirm its grant of summary judgment to Bridges with respect to Nocilla's claimed anxiety, sleeping problems, and lost wages. But we reverse the court's grant of summary judgment to Bridges with respect to Nocilla's laceration and any pain and suffering associated with that injury.

14